IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1644 (MN) |
| | ) | |
| UNITED STATES SUGAR | ) | |
| CORPORATION, UNITED SUGARS | ) | |
| CORPORATION, IMPERIAL SUGAR | ) | |
| COMPANY, and LOUIS DREYFUS | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF
IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a) OR TO EXPEDITE TRIAL**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant United States Sugar
Corporation*

HOGAN MCDANIEL
Daniel K. Hogan (#2814)
Daniel C. Kerrick (#5027)
1311 Delaware Avenue, Suite 1
Wilmington, DE  19806
(302) 656-7540
dkhogan@dkhogan.com
dckerrick@dkhogan.com

*Attorneys for Defendant United Sugars
Corporation*

RICHARDS, LAYTON & FINGER, P.A.
Kelly E. Farnan (#4395)
One Rodney Square
Wilmington, DE  19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendants Imperial Sugar
Company and Louis Dreyfus Company LLC*

December 3, 2021

## TABLE OF CONTENTS

**Page**

Nature Of Proceedings .........................................................................................................1

Summary Of Argument........................................................................................................1

Statement Of Facts..............................................................................................................3

Argument .............................................................................................................................5

I.      The Majority Of Public And Private Factors Strongly Weigh In Favor Of Transfer ..........7

      A.      Defendants' Preference Weighs In Favor Of Transfer ............................................7

      B.      This Claim Arose In The Southern District Of Georgia .........................................7

      C.      The Southern District Of Georgia Is More Convenient For The Parties ................9

      D.      The Convenience Of The Witnesses Weighs Heavily In Favor Of Transfer ..........9

      E.      Georgia Provides More Convenient Access To Relevant Books And Records .......................................................................................................................11

      F.      Georgia's Local Interests And Policies Support Transfer ....................................11

      G.      The Southern District Of Georgia Is Less Congested, And Thus Better Able To Accommodate An Expedited Trial ..........................................................12

II.      Two Minimal Factors Are Neutral.....................................................................................13

III.      The DOJ's Choice Of Forum Should Be Given Little Deference .....................................13

IV.      If The Court Decides Not To Transfer, Defendants Request That It Expedite Trial.........16

Conclusion .........................................................................................................................17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affymetrix, Inc. v. Synteni, Inc.*,
   28 F. Supp. 2d 192 (D. Del. 1998)........................................................................9

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
   295 F. Supp. 2d 393 (D. Del. 2002)......................................................................15

*Beall v. Edwards Lifesciences LLC*,
   310 F. Supp. 3d 97 (D.D.C. 2018) .........................................................................8

*Ceradyne, Inc. v. RLI Ins. Co.*,
   2021 WL 3145171 (D. Del. July 26, 2021) ...............................................6, 7, 13, 15

*Cruise Control Techs. LLC v. Chrysler Grp. LLC*,
   2014 WL 1304820 (D. Del. Mar. 31, 2014) .......................................................14, 15

*Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n*,
   856 F. Supp. 2d 186 (D.D.C. 2012) ......................................................................14

*FTC v. Acquinity Interactive*,
   2014 WL 37808 (N.D. Ill. Jan. 6, 2014) ................................................................14

*FTC v. Cephalon, Inc.*,
   551 F. Supp. 2d 21 (D.D.C. Apr. 28, 2008)........................................................8, 14

*FTC v. Graco Inc.*,
   2012 WL 3584683 (D.D.C. Jan. 26, 2012) .......................................................8, 11, 14

*FTC v. Illumina, Inc.*,
   2021 WL 1546542 (D.D.C. Apr. 20, 2021) .......................................................7, 12, 13, 14

*FTC v. Sysco Corp.*,
   113 F. Supp. 3d 1 (D.D.C. 2015) ..........................................................................12

*Gen. Sci. Corp. v. Den-Mat Holdings, LLC*,
   2021 WL 4622548 (D. Del. Oct. 7, 2021) ...............................................................6, 9, 13

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)..................................................................................5, 6

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011)............................................................................15

*Triple C Railcar Serv., Inc. v. City of Wilmington*,
    630 A.2d 629 (Del. 1993) ...................................................................15

*Trout Unlimited v. Dep't of Agric.*,
    944 F. Supp. 13 (D.D.C. 1996) ...........................................................11

*United States v. Anthem, Inc.*,
    236 F. Supp. 3d 171 (D.D.C. 2017) ....................................................12

*United States v. Energy Sols., Inc.*,
    265 F. Supp. 3d 415 (D. Del. 2017) ......................................................3

*United States v. Energy Sols., Inc.*,
    2016 WL 6803190 (D. Del. Nov. 16, 2016) ....................................3, 15

*United States v. H & R Block, Inc.*,
    833 F. Supp. 2d 36 (D.D.C. 2011) .......................................................12

*United States v. Microsemi Corp.*,
    2009 WL 577491 (E.D. Va. Mar. 4, 2009) ..........................................14

*United States v. Oracle Corp.*,
    331 F. Supp. 2d 1098 (N.D. Cal. 2004) .................................................9

*United States v. Sabre Corp.*,
    452 F. Supp. 3d 97 (D. Del. 2020) ........................................................3

*Werner v. Hive Media Grp., LLC*,
    2021 WL 3662902 (D. Del. Aug. 18, 2021) ..........................................7

*Wilmington Hous. Auth. v. Fid. & Deposit Co. of Md.*,
    47 A.2d 524 (Del. 1946) ......................................................................15

## STATUTES

15 U.S.C. § 18 .............................................................................................1

15 U.S.C. § 23 .............................................................................................9

15 U.S.C. § 25 ..........................................................................1, 2, 12, 16

28 U.S.C. § 1404(a) .................................................................................2, 5

Clayton Act § 7 .................................................................................. *passim*

## OTHER AUTHORITIES

Table, U.S. District Courts, Federal Court Management Statistics Profiles During The 12-Month
    Periods Ending June 30, 2016 Through 2021, United States Courts ......................................13

Defendants United States Sugar Corporation ("U.S. Sugar"), United Sugars Corporation ("United Sugars"), Imperial Sugar Company ("Imperial"), and Louis Dreyfus Company LLC ("Louis Dreyfus") (collectively, "Defendants") respectfully move to transfer this antitrust action to the United States District Court for the Southern District of Georgia, Savannah Division, or to expedite trial in this District if the Court declines to transfer venue.  On December 3, 2021, counsel for the parties, including Delaware counsel, conducted a lengthy telephonic meet and confer session regarding this motion but were unable to reach agreement on the requested relief.

## NATURE OF PROCEEDINGS

The U.S. Department of Justice ("DOJ") filed this civil antitrust lawsuit on November 23, 2021.  *See* D.I. 1.  A bench trial will determine whether U.S. Sugar's acquisition of Imperial Sugar violates Clayton Act Section 7, 15 U.S.C. § 18.  The statute requires a court to make that determination "as soon as may be."  15 U.S.C. § 25.

## SUMMARY OF ARGUMENT

DOJ is suing to prevent U.S. Sugar, a company headquartered in Clewiston, Florida, from acquiring Imperial's sugar refinery in Port Wentworth, Georgia—a small city near Savannah, Georgia.  DOJ alleges that the acquisition will cause particular harm to customers "in Imperial's backyard:  Georgia and the five states that border it," D.I. 1 ¶ 4, which DOJ alleges is a relevant geographic market under Section 7 of the Clayton Act, 15 U.S.C. § 18, D.I. 1 ¶ 33.  The negotiations to acquire the Imperial facility primarily took place in Georgia and Florida.  Most of the key party witnesses are located in Georgia or Florida.  Customers in Georgia and its bordering states will be important witnesses at trial, as will competing processors of sugar, several of which operate facilities or have distribution operations in Georgia.  There is no legitimate dispute that the Southern District of Georgia has a direct and logical connection to this dispute, and that DOJ could have brought this case in the Southern District of Georgia.  But DOJ chose instead to bring suit

many hundreds of miles away in this District—an area it asserts is part of the "Southeast,"[1] D.I. 1 ¶ 31, but does not otherwise tie to the allegations or potential witnesses in this matter.

Under the circumstances, DOJ's choice of Delaware as the venue for this case is entitled to little deference. Many courts have rejected the government's efforts to litigate Section 7 claims in districts with little connection to the challenged transaction. Here, the only connection to this District is that (1) Delaware is the state of organization of two of the four defendants (U.S. Sugar and Louis Dreyfus), and (2) the Asset Purchase Agreement specifies that disputes *between the parties* regarding the Agreement are to be litigated in Delaware, and that in such disputes Delaware law controls (as is true in thousands of commercial contracts). When compared with the overwhelming focus of the case on Georgia, it is clear that the § 1404(a) factors overwhelmingly favor transfer. Accordingly, Defendants request that the Court transfer this action to the Southern District of Georgia pursuant to 28 U.S.C. § 1404(a).

If the Court declines to transfer venue, Defendants request that the Court expedite the bench trial of this matter. When DOJ seeks to block a deal, that creates significant market uncertainty, which can cause real harm to merging companies in terms of competing for sales and retaining employees. For that reason, trials of claims brought under Section 7 of the Clayton Act occur quickly. Indeed, the Clayton Act requires that the district court proceed to hear and determine cases like this one "as soon as may be." 15 U.S.C. § 25. But here, DOJ is seeking to not have trial commence until September 2022, which is more than twice as long as it historically has taken similar cases to get to trial. September 2022, not coincidentally, is the outside date in the parties' Asset Purchase Agreement, after which either party may seek to avoid further market uncertainty

---

[1]     Outside of the Complaint, Delaware is uniformly regarded as a Mid-Atlantic state, not as part of the Southeast. And nobody could suggest that Delaware is a bordering state to Georgia.

and abandon the transaction.  *See* Declaration of Lindsey Champlin ("Champlin Decl.") ¶ 11.  DOJ has already conducted seven months of unilateral discovery into this case, including collecting over 2.6 million pages of documents from Defendants, deposing multiple party witnesses, and pursuing an undisclosed amount of interviews, depositions, and documents from third parties.  *Id.* ¶¶ 7-10.  Defendants believe that the evidence will establish that this transaction is beneficial to U.S. farmers, customers and consumers (including but not limited to those in Georgia and the surrounding states), and that the law does not support DOJ's attempt to block this deal.  But whether Defendants or DOJ are correct, the fate of this deal should be decided on the merits, not through maneuvering or the running out of a clock.  Defendants submit that trial should commence by April 2022—which is consistent with the time to trial in most recent Section 7 cases, including cases in this District.  *See, e.g.*, *United States v. Sabre Corp.*, 452 F. Supp. 3d 97, 103 (D. Del. 2020) (160 days from complaint to start of trial); *compare United States v. Energy Sols., Inc.*, 265 F. Supp. 3d 415, 420 (D. Del. 2017), *with United States v. Energy Sols., Inc.*, 2016 WL 6803190 (D. Del. Nov. 16, 2016) (159 days from complaint to start of trial).

## STATEMENT OF FACTS

Defendant U.S. Sugar is a ninety-year old Florida company that grows and processes sugarcane, citrus, and fresh vegetables.  Declaration of Robert Buker, Jr. ("U.S. Sugar Decl.") ¶ 2.  Though U.S. Sugar is incorporated in Delaware, it does not have any offices, employees, or other physical assets in Delaware.  *Id.* ¶ 4.

Defendant United Sugars markets and sells the refined sugar that U.S. Sugar produces, along with sugar produced by three other member-owners.  D.I. 1 ¶ 2.  In addition to U.S. Sugar's Florida refinery, United Sugars' member-owners operate sugar refineries in Minnesota, Montana, North Dakota, and Wyoming, but not in Delaware.  D.I. 1 ¶ 9; Declaration of Matthew Wineinger ("United Decl.") ¶ 2.  United Sugars is incorporated in Minnesota and maintains its headquarters

in that state.  United Decl. ¶ 3.  United Sugars does not have any offices, employees, or other physical assets in Delaware.  *Id.*  Customers in Delaware account for a small fraction of all sugar sold by United Sugars.  *Id.* ¶ 4.

Defendant Imperial is the owner and operator of a sugar processing facility in Port Wentworth, Georgia—a small city near Savannah, Georgia.  Declaration of Michael Gorrell ("Imperial Decl.") ¶ 3.  In contrast to U.S. Sugar, Imperial does not grow any of its own sugarcane. Instead, Imperial's facility is located near a port, where it receives imported raw sugar that it then processes for domestic distribution.  *Id.* ¶ 5.  Imperial is incorporated in Texas with offices in Port Wentworth, Georgia, and Sugar Land, Texas.  D.I. 1 ¶ 11; Imperial Decl. ¶ 3.  The Port Wentworth, Georgia facility is Imperial's only sugar refinery.  Imperial Decl. ¶ 3.  That Georgia facility has approximately 400 employees, including Imperial's President and Chief Executive Officer, its Consumer Regional Sales Manager, and its Senior Trader responsible for procurement of raw sugar, all three of whom are designated as "Key Employees" in the Asset Purchase Agreement. *Id.* ¶¶ 3, 10.  Imperial does not have any offices, employees, or physical assets in Delaware.  *Id.* ¶ 4. Customers in Delaware account for a small fraction of sugar refined by Imperial.  *Id.* ¶ 6.

Imperial is owned by a subsidiary of a foreign company:  Louis Dreyfus Company B.V. Louis Dreyfus Company B.V. is headquartered in the Netherlands and owns agricultural assets globally.  *Id.* ¶ 7.  Though Defendant Louis Dreyfus is organized in Delaware, neither it nor its parent company have any offices or employees in Delaware.  *Id.*

On March 24, 2021, U.S. Sugar entered into an agreement to acquire Imperial's Georgia facility (and certain other assets, none of which are located in Delaware).  Under U.S. Sugar's ownership, Imperial's Georgia facility will increase its overall output of refined sugar; it will be less reliant on foreign imports, which depend upon the amount of foreign imports allowed by the

Department of Agriculture; and it will refine raw sugar grown by U.S. farmers that U.S. Sugar is unable to process.  U.S. Sugar Decl. ¶ 3.  In addition, this acquisition will provide customers with additional volume, access to a wider variety of sugar products, and security against supply chain disruptions caused, for example, by increased extreme weather-related events.  *Id.*

During the course of negotiations of the Asset Purchase Agreement, Imperial's Chief Executive Officer Michael Gorrell, who is based in Port Wentworth, Georgia, led Imperial's due diligence efforts regarding the Port Wentworth facility, including providing plant tours and site visits to U.S. Sugar employees.  Imperial Decl. ¶¶ 1, 3, 8, 9.  Other principals in the negotiation included U.S. Sugar's President and CEO Robert Buker, Jr., SVP of Sugar Manufacturing Neil Smith, and SVP and CFO Elaine Wood (all based in Clewiston, Florida), and Louis Dreyfus' CEO North American Region Adrian Isman, EVP and CFO Robert Eckert, Head of Business Development and Mergers and Acquisitions – North America Robert Waxlax, and Chief Legal Officer – North America Neil Grealy (none of whom are based in Delaware).  U.S. Sugar Decl. ¶ 5; Imperial Decl. ¶ 8.  The Asset Purchase Agreement lists four Imperial employees as "Key Employees" in connection with the sale; three of those four employees are based in Port Wentworth, Georgia, with the fourth based in Sugar Land, Texas, and Madison, Wisconsin.  Imperial Decl. ¶ 10.

## ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice," a court may "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  When assessing whether to transfer, courts "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,

Fed. Practice & Procedure: Jurisdiction & Related Matters § 3847 (2d ed. 1986)).  Although there is "no definitive formula or list of the factors to consider" in the transfer analysis, courts in this Circuit consider "12 interests 'protected by the language of § 1404(a).'"  *Gen. Sci. Corp. v. Den-Mat Holdings, LLC*, 2021 WL 4622548, at *2 (D. Del. Oct. 7, 2021) (quoting *Jumara*, 55 F.3d at 879).  Six of those factors are private, including:

> (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records.

*Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *4 (D. Del. July 26, 2021) (Noreika, J.) (citing *Jumara*, 55 F.3d at 879).  The remaining six factors are public, including:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law.

*Id.*

Because DOJ could have brought this action in the Southern District of Georgia,[2] the claims arise from and relate to events transpiring in the Southern District of Georgia, and considerations of convenience and justice weigh strongly in favor of transfer, this action should be transferred to the Southern District of Georgia.  In the alternative, if this Court does not transfer

---

[2]   During the parties' meet and confer, DOJ stated that it was not prepared at this time to waive any arguments as to whether it could have brought this action in the Southern District of Georgia or not.  Defendants respectfully submit that it is beyond contestation that this matter could have been brought originally in the Southern District of Georgia.  Assuming DOJ ultimately concedes that point, the Court need not consider whether venue and jurisdiction would have been proper in the transferee court.  *See Ceradyne*, 2021 WL 3145171, at *4 (skipping this step where plaintiff "did not dispute that th[e] action could have been brought in" the transferee court).

venue, Defendants respectfully request that the Court expedite the trial of this action so that it occurs no later than April 2022.

## I. THE MAJORITY OF PUBLIC AND PRIVATE FACTORS STRONGLY WEIGH IN FAVOR OF TRANSFER

Most of the public and private interest factors strongly weigh in favor of transfer to the Southern District of Georgia, including Defendants' preference for that forum, its connection to the locus of this action (which seeks to block the acquisition of a sugar refinery in that district), the convenience of parties, non-party witnesses, and other sources of proof (most of which are located in Georgia or its bordering states), court congestion in this District, and the local interest of the Southern District of Georgia in this action.

### A. Defendants' Preference Weighs In Favor Of Transfer

The Defendants' strong preference is to litigate this case in the Southern District of Georgia. This factor, "of course, weighs in favor of transfer." *Werner v. Hive Media Grp., LLC*, 2021 WL 3662902, at *3 (D. Del. Aug. 18, 2021). This factor is particularly important because Defendants "have a legitimate and rational reason for their alternative forum." *Ceradyne*, 2021 WL 3145171, at *5. As described further below, the Southern District of Georgia is the rational choice for litigating this case because the claim arose in that district, the sugar refinery that is at the center of this lawsuit is in that district, the customers that allegedly will be most affected by this transaction are in "Georgia and its bordering states," D.I. 1 ¶ 33, and Georgia provides convenient access to the parties, critical non-party witnesses, and other sources of proof.

### B. This Claim Arose In The Southern District Of Georgia

In merger challenges like this one, courts assess where claims arose based on "the location where the corporate decisions underlying those claims were made or where most of the significant events giving rise to the claims occurred." *FTC v. Illumina, Inc.*, 2021 WL 1546542, at *4 (D.D.C.

Apr. 20, 2021) (quoting *Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97, 104 (D.D.C. 2018)); *see also FTC v. Graco Inc.*, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012).  For example, in *Federal Trade Commission v. Cephalon, Inc.*, the U.S. District Court for the District of Columbia transferred the case because "[n]one of the negotiations that led to the [] agreements at the heart of th[e] controversy took place in . . . the District."  551 F. Supp. 2d 21, 26 (D.D.C. 2008).  The same is true here.  None of the negotiations leading up to the sale of Imperial to U.S. Sugar took place in Delaware.  U.S. Sugar Decl. ¶ 5; Imperial Decl. ¶ 9.  In addition, none of the corporate decision makers and none of the negotiators of the transaction are located in Delaware, and no meetings, discussions, or communications related to the transaction occurred here either.  U.S. Sugar Decl. ¶ 5; Imperial Decl. ¶ 9.

The negotiations did, by contrast, involve due diligence, site visits, and plant tours at the Port Wentworth facility outside Savannah, Georgia.[3]  U.S. Sugar Decl. ¶ 5; Imperial Decl. ¶ 9.  The employee primarily in charge of those due diligence efforts for Imperial was its CEO Michael Gorrell, who is based in Port Wentworth and is named in the Asset Purchase Agreement as a "Key Employee."  Imperial Decl. ¶¶ 8, 9.  The subject of the Asset Purchase Agreement that is at dispute in this lawsuit is, of course, the Port Wentworth facility.  And it is the prospect of U.S. Sugar's operation of that plant in Georgia that supposedly gives rise to the claimed anticompetitive effects that DOJ is focused on in this lawsuit.  Because much of the corporate decisions giving rise to the Asset Purchase Agreement, and the subject of the agreement giving rise to this lawsuit, relate directly to the Southern District of Georgia, this factor weighs strongly in favor of transfer.

---

[3]  Additional in-person negotiations took place in U.S. Sugar's facilities in Clewiston, Florida.  U.S. Sugar Decl. ¶ 5.

### C.  The Southern District Of Georgia Is More Convenient For The Parties

It is far more convenient for the Parties to litigate this action in Georgia than in Delaware. Georgia is the site of the to-be acquired Port Wentworth facility and its 400 employees, and is far closer to U.S. Sugar's Florida headquarters, farms, and refinery. *See Gen. Sci. Corp.*, 2021 WL 4622548, at *2 (weighing factor in favor of transfer where defendant's "potential party witnesses, documents, books, and records" are in the transferee district). No Defendant has employees in Delaware. U.S. Sugar Decl. ¶ 4; Imperial Decl. ¶ 4; United Decl. ¶ 3. Meanwhile, Imperial has critical employee witnesses located in the Southern District of Georgia, and U.S. Sugar has critical employee witnesses located in neighboring Florida. U.S. Sugar Decl. ¶ 5; Imperial Decl. ¶ 10. Any witnesses from Louis Dreyfus or United Sugars will need to travel regardless of forum, but as is typical for owners of subsidiaries, Louis Dreyfus employees travel to Georgia on a regular basis; they do not regularly travel to Delaware. Imperial Decl. ¶ 11. And, United Sugars employees travel to Florida and Georgia as part of their sales efforts on behalf of U.S. Sugar. United Decl. ¶ 5. Finally, lawyers and experts for DOJ will need to travel from Washington, D.C., or elsewhere regardless of whether the case is tried in Delaware or Georgia.

### D.  The Convenience Of The Witnesses Weighs Heavily In Favor Of Transfer

The convenience of non-party witnesses, which courts "have traditionally weighed quite heavily in the 'balance of convenience' analysis," *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998), strongly supports transfer. 15 U.S.C. § 23 provides for nationwide trial subpoenas in cases brought by the United States. The question then is whether it would be more convenient for non-party witnesses—whose testimony is often critical in Section 7 cases, *see, e.g., United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1125 (N.D. Cal. 2004) (noting DOJ called over 15 non-parties witnesses in its case alone)—to appear in the District of Delaware or in the Southern District of Georgia. DOJ's challenge to the acquisition turns largely on its assertions

about "particularly acute harm" to sugar "customers in Georgia and its bordering states."  D.I. 1 ¶¶ 29, 33.  As a result, testimony from such customers will be presented at trial—and it would plainly be more convenient for customers in Georgia (or neighboring states such as Florida, Alabama, or South Carolina) to appear at trial in the Southern District of Georgia.

Customers located in Georgia and its neighboring states are not the only critical non-party witnesses.  DOJ claims that, if this acquisition is completed, only two sugar companies would dominate sales in Georgia and surrounding states—United Sugars (selling U.S. Sugar's Florida and Georgia production) and American Sugar Refining ("ASR").  *See* D.I. 1 ¶¶ 4, 18.  That is wrong, and will be a central issue at trial, involving testimony not only from ASR (with its headquarters in Florida and with its "major refineries in Florida, Maryland, and Louisiana," *id.* ¶ 4), but also from other competitors for sales in Georgia and surrounding states.  These other competitors include, among others, Batory Foods (distribution facility in Lithia Springs, Georgia), ICI Foods (distribution facility in Morrow, Georgia), JM Swank (distribution facility in Atlanta, Georgia), Marigold (distribution facility in Atlanta, Georgia), National Sugar Marketing (headquarters in Atlanta, Georgia), St. Charles Trading (distribution facility in Atlanta, Georgia), ADM (distribution facility in Chattanooga, Tennessee, and sales in Georgia), Atlantic Ingredients (distribution facility in Fort Mill, South Carolina, and sales in Georgia), Evergreen Sweeteners (multiple Florida locations and sales in Georgia), and LSR (refinery in Louisiana and sales in Georgia).  Imperial Decl. ¶ 13.  As a matter of convenience, it will be far easier for witnesses from these companies to testify at trial in Georgia than to testify in Delaware.

Moreover, while the Complaint refers to various anonymous third parties, Defendants understand that none of these third parties are based in Delaware.  There are no readily identifiable

third parties for whom Delaware is a more convenient forum.  As a result, this factor strongly favors transfer.

### E.  Georgia Provides More Convenient Access To Relevant Books And Records

None of the Defendants' books and records that are relevant to this dispute are located in Delaware.  They are primarily located in Georgia, Florida, and Texas.  U.S. Sugar Decl. ¶ 4; Imperial Decl. ¶ 12; United Decl. ¶ 3.  Although technological advances ease the burden of transferring such documentary evidence, there are important parts of this case that electronic transfers cannot ease.  A focus of this litigation will be U.S. Sugar's strategic goals for the acquisition, which include improving the capacity, efficiency, and operations of Imperial's Savannah, Georgia sugar facility.  U.S. Sugar Decl. ¶ 3.  As a result, a site visit to the Savannah, Georgia facility may become necessary for expert witnesses—or perhaps even the Court.  A trial in the Southern District of Georgia—or "Imperial's backyard," as DOJ calls it (D.I. 1 ¶ 4)—would greatly facilitate such site visits.

### F.  Georgia's Local Interests And Policies Support Transfer

The Southern District of Georgia has a strong interest in overseeing a case that arises in that District and that will allegedly most directly affect that District, state, and surrounding area. *See Graco*, 2012 WL 3584683, at *6 ("The District of Minnesota has an interest in having plaintiff's claims 'resolved in the locale where they arise.'" (quoting *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996))).  Primary motivations for this transaction are (1) to revitalize the Port Wentworth sugar facility to improve its operations, efficiency, and output; and (2) to reduce its dependence on foreign imports and instead process sugarcane grown by American farmers in Florida.  U.S. Sugar Decl. ¶ 3.  Whether U.S. Sugar is permitted to pursue those objectives or not will directly impact the approximately 400 employees who work at the Port Wentworth facility and live in the surrounding community.  The Georgia court has a direct interest

in presiding over this case, because "a decision blocking or permitting the merger could affect the company's employees who live there." *See Illumina*, 2021 WL 1546542, at *7. Additionally, DOJ alleges that "customers in Georgia and its bordering states would face particularly acute harm because United and Imperial are especially close competitors for these customers given Defendants' refinery locations and the locations of other sugar producers." D.I. 1 ¶ 33. If the rights and interests of Georgia customers will be most directly affected by the merger, a Georgia court is in the best position to decide what is in the best interest of those local customers.

### G. The Southern District Of Georgia Is Less Congested, And Thus Better Able To Accommodate An Expedited Trial

Merger-challenge trials must occur quickly—or else the challenged transaction may be abandoned. *See, e.g.*, *AT&T Inc.*, 310 F. Supp. 3d at 184-85 ("Given the stakes and the June 21, 2018 drop-dead merger deadline, the parties proceeded through discovery on an expedited basis."). In fact, the statute applicable to these proceedings mandates that courts "shall proceed, as soon as may be, to the hearing and determination of the case," 15 U.S.C. § 25, and most Section 7 trials begin four months or less after the complaint is filed. *See, e.g.*, *AT&T*, 310 F. Supp. 3d at 184, 187 (less than four months from complaint filed on November 20, 2017, to trial on March 19, 2018); *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 186-87 (D.D.C. 2017); (four months from complaint on July 21, 2016, to trial on November 21, 2016); *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 15, 21 (D.D.C. 2015) (2.5 months from complaint filed on February 20, 2015, to trial on May 5, 2015); *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 43-44 (D.D.C. 2011) (3.5 months between complaint filed on May 23, 2011, to trial on September 6, 2011).

Multiple metrics of court congestion indicate that the Southern District of Georgia is currently better positioned to quickly resolve this dispute than this District. The most recent Judicial Caseload Profiles indicate that, compared to the District of Delaware, the Southern District

of Georgia has fewer pending cases per judgeship (609 vs. 637), fewer civil filings per judgeship (343 vs. 477), fewer weighted filings per judgeship (546 vs. 942), and far fewer civil cases over three years old (95 vs. 317). *See* Table, U.S. District Courts, Federal Court Management Statistics Profiles During the 12-Month Periods Ending June 30, 2016 Through 2021, United States Courts, www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf (last visited Dec. 3, 2021). The Court may take judicial notice of these statistics, and it is well-known that there are a large number of time-consuming patent cases pending in this District, making quick trials difficult. Although there is no data on the median time to trial in civil cases in the Southern District of Georgia, it is undoubtedly shorter than the more than 31 months in this District. *Id.* These statistics "as a whole weigh in favor of transfer." *Ceradyne*, 2021 WL 3145171, at *8 (taking judicial notice of pending cases per judgeship, civil cases over three years old, number of weighted filings, and median time between filing and trial in civil cases).

## II.      TWO MINIMAL FACTORS ARE NEUTRAL

Two of the twelve factors are neutral with respect to transfer. Because this case arises under Section 7 of the Clayton Act—a federal law—"the familiarity of the respective districts with state law is not applicable and this factor is neutral." *Gen. Sci. Corp. v. Den-Mat Holdings, LLC*, 2021 WL 4622548, at *4 (D. Del. Oct. 7, 2021). Similarly, a judgment "would be equally enforceable" in either district, making this factor neutral. *Ceradyne*, *Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *7 (D. Del. July 26, 2021).

## III.     THE DOJ'S CHOICE OF FORUM SHOULD BE GIVEN LITTLE DEFERENCE

The DOJ's choice of Delaware—a forum far from the center of the alleged "acute harm"— should carry reduced weight in this analysis in the circumstances present here. The deference owed to the plaintiff's choice of forum "diminishes if 'there is an insubstantial factual nexus between the case and the plaintiff's chosen forum.'" *See FTC v. Illumina, Inc.*, 2021 WL 1546542,

at \*6 (D.D.C. Apr. 20, 2021) (quoting *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012)).  That is often the case in merger challenges like this one, where the government sues in a forum as far removed as possible from the merging parties' physical operations, as well as from the workers, customers, and communities that would benefit most directly from the merger.  The government tried earlier this year in *Federal Trade Commission v. Illumina, Inc.*, suing in a Washington, D.C. court to block the merger of two California companies.  *Id.*  Noting in its analysis that the lawsuit "originated out of a merger that two California-based companies negotiated in California," the court did "not defer to the [FTC's] choice of forum" after finding that the case "lack[ed] a meaningful connection to the District."  *Id.* at \*6-7.  The same analysis applies here.  And there are many other examples of federal agencies unsuccessfully seeking to block mergers in jurisdictions that have minimal connections to the businesses involved, ultimately resulting in transfer.  *See, e.g.*, *FTC v. Graco, Inc.*, 2012 WL 3584683, at \*7 (D.D.C. Jan. 26, 2012); *United States v. Microsemi Corp.*, 2009 WL 577491, at \*7-10 (E.D. Va. Mar. 4, 2009); *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 27-28 (D.D.C. Apr. 28, 2008); *see also FTC v. Acquinity Interactive*, 2014 WL 37808, at \*2 (N.D. Ill. Jan. 6, 2014) (non-merger case involving the same government tactic).

And the fact that two of the four Defendants—U.S. Sugar and Louis Dreyfus—are organized in this District does not mean that the Court should defer to the DOJ's choice of Delaware.  Of the four companies that DOJ has sued here, two of those companies are *not* organized in Delaware—including the company that owns the facility in Port Wentworth, Georgia that is the subject of this merger challenge.  *See* D.I. 1 ¶ 62; Imperial Decl. ¶ 3; United Decl. ¶ 3. The presence of non-Delaware defendants counterbalances U.S. Sugar's and Louis Dreyfus' local organization.  *See Cruise Control Techs. LLC v. Chrysler Grp. LLC*, 2014 WL 1304820, at \*4 (D.

Del. Mar. 31, 2014); *Ceradyne*, 2021 WL 3145171, at *8 ("Although Delaware does have an interest in the controversy because Ceradyne is a Delaware corporation, this interest is not necessarily as strong as it would be in 'litigation solely among Delaware corporations.'"); *c.f. United States v. Energy Sols., Inc.*, 2016 WL 7387069 (D. Del. Dec. 21, 2016) (denying motion to transfer where *all four* defendants were incorporated in Delaware and factors such as the convenience of the parties or third party witnesses did not strongly support transfer). But "even regarding those Defendants who are incorporated in Delaware, the [Southern District of Georgia] still has a stronger interest to this litigation because it is where the claims arose and where the employees and known material witnesses are located." *Cruise Control Techs.*, 2014 WL 1304820, at *4. Indeed, it is notable that "[n]either § 1404 nor *Jumara* lists a party's state of incorporation as a factor for a venue inquiry." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). Quite simply, "[w]here an alternative forum is more convenient and has more substantial connections with the litigation 'incorporation in Delaware will not prevent transfer.'" *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (internal citation omitted).[4]

The focus of this case is, as DOJ alleges, Georgia and its neighboring states. The Southern District of Georgia should be the Court to decide whether to enjoin the challenged acquisition.

---

[4]     The fact that the Asset Purchase Agreement specifies that Delaware law controls and that disputes between the parties are to be decided in Delaware (as is true in thousands of commercial contracts) also is not controlling. This is not a dispute between parties to that Agreement. *See, e.g.*, *Triple C Railcar Serv., Inc. v. City of Wilmington*, 630 A.2d 629, 633 (Del. 1993) (noting that a non-party to a contract may enforce a promise contained in the contract only "if the contract has been made for his benefit" (citing *Wilmington Hous. Auth. v. Fid. & Deposit Co. of Md.*, 47 A.2d 524, 529 (Del. 1946))).

## IV.   IF THE COURT DECIDES NOT TO TRANSFER, DEFENDANTS REQUEST THAT IT EXPEDITE TRIAL

Because of the extensive impact that delay has on the Defendants' respective businesses, a trial of this matter must occur as quickly as possible, and in all events sufficiently in advance of the outside date in the Asset Purchase Agreement.  Defendants are mindful of the tremendous burden placed on the Judges in this District by the hundreds of patent cases filed here.  If the Court declines to grant Defendants' motion to transfer, Defendants nevertheless respectfully request that the Court set the bench trial of this matter for no later than April 2022.  Defendants make this request because it is clear that without an expedited trial, this deal may crater by virtue of delay.  Recognizing that the Defendants' Asset Purchase Agreement has an outside date in September 2022 (which often operates in these situations as an expiration date), DOJ has proposed a trial commencing that month.  Champlin Decl. ¶ 11.  The DOJ's timing proposal departs significantly (it is almost twice as long) from how long it historically has taken comparable cases to get to trial, and is inconsistent with the Clayton Act, which requires that "the court shall proceed, as soon as may be, to the hearing and determination of the case."  15 U.S.C. § 25.  Indeed, Defendants are not aware of any comparable Section 7 case over the last decade in which there has been as long a period between complaint and trial as DOJ is advocating for here.  Furthermore, DOJ already has been investigating this merger for seven months, and has taken depositions and obtained over 2.6 million pages of document discovery from the Defendants alone, not counting the amount of materials it has received from any third parties.  Champlin Decl. ¶¶ 7-8.  A trial no later than April 2022 will leave sufficient time for a determination of this matter, and Defendants will be able to have the fate of the transaction decided on the merits rather than by the calendar.

## CONCLUSION

Defendants submit the Court should transfer this action to the United States District Court for the Southern District of Georgia, Savannah Division.  If the Court decides not to transfer this action, Defendants request that trial be expedited and set for no later than April 2022.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

Lawrence E. Buterman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY  10020
(212) 906-1200

Amanda P. Reeves
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
(202) 637-2200

Elyse M. Greenwald
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA  90067
(213) 485-1234

*Attorneys for Defendant United States Sugar Corporation*

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Kelly E. Farnan*

OF COUNSEL:

Amanda L. Wait
Vic Domen
NORTON ROSE FULBRIGHT US LLP
799 Ninth Street, NW, Suite 1000
Washington, DC  20001
(202) 662-4550

Darryl Wade Anderson
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Street, Suite 5100
Houston, TX  77010-3095
(713) 651-5562

Kelly E. Farnan (#4395)
One Rodney Square
Wilmington, DE  19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendants Imperial Sugar*
*Company and Louis Dreyfus Company LLC*

HOGAN MCDANIEL

*/s/ Daniel K. Hogan*

OF COUNSEL:

Timothy J. Pabst, Esquire
Sharon R. Markowitz, Esquire
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN  55402
(612) 335-1500

Daniel K. Hogan (#2814)
Daniel C. Kerrick (#5027)
1311 Delaware Avenue, Suite 1
Wilmington, DE  19806
(302) 656-7540
dkhogan@dkhogan.com
dckerrick@dkhogan.com

*Attorneys for Defendant United Sugars*
*Corporation*

18

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 3, 2021, upon the following in the manner indicated:

Laura D. Hatcher, Esquire                    *VIA ELECTRONIC MAIL*
Shamoor Anis, Esquire
UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF DELAWARE
1313 North Market Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Brian Hanna, Esquire                         *VIA ELECTRONIC MAIL*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Fifth Street, NW, Suite 8000
Washington, DC  20530
*Attorneys for Plaintiff*


                              */s/ Jack B. Blumenfeld*
                              _____
                              Jack B. Blumenfeld (#1014)