IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1644 (MN) |
| | ) | |
| UNITED STATES SUGAR | ) | |
| CORPORATION, UNITED SUGARS | ) | |
| CORPORATION, IMPERIAL SUGAR | ) | |
| COMPANY and LOUIS DREYFUS | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Laura D. Hatcher, Chief, Civil Division, Shamoor Anis, UNITED STATES ATTORNEY'S OFFICE, Wilmington, DE; Brian Hanna, Jonathan Y. Mincer, Jenigh Garrett, Jill Ptacek, UNITED STATES DEPARTMENT OF JUSTICE, Antitrust Division, Washington, DC – attorneys for Plaintiff

Jack B. Blumenfeld, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Lawrence E. Buterman, LATHAM & WATKINS LLP, New York, NY; Amanda P. Reeves, LATHAM & WATKINS LLP, Washington, DC; Elyse M. Greenwald, LATHAM & WATKINS LLP, Los Angeles, CA – attorneys for Defendant United States Sugar Corporation

Daniel K. Hogan, Daniel C. Kerrick, HOGAN MCDANIEL, Wilmington, DE; Peter J. Schwingler, STINSON LLP, Minneapolis, MN – attorneys for Defendant United Sugars Corporation

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Amanda L. Wait, Vic Domen, NORTON ROSE FULBRIGHT US LLP, Washington, DC; Darryl Wade Anderson, NORTON ROSE FULBRIGHT US LLP, Houston, TX; Christine A. Varney, David R. Marriott, Peter T. Parbur, Timothy G. Cameron, CRAVATH, SWAINE & MOORE LLP, New York, NY – attorneys for Defendants Imperial Sugar Company and Louis Dreyfus Company LLC

January 11, 2022
Wilmington, Delaware



NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is the motion (D.I. 13) of Defendants United States Sugar Corporation ("U.S. Sugar"), United Sugars Corporation ("United Sugars"), Imperial Sugar Company ("Imperial Sugar") and Louis Dreyfus Company LLC ("Louis Dreyfus") (collectively, "Defendants") to transfer this case to the Southern District of Georgia pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court DENIES Defendants' motion.[1]

I. **BACKGROUND**

U.S. Sugar is a Delaware corporation with its principal place of business in Florida. (D.I. 14 at 3; *see also* D.I. 18 ¶ 2). U.S. Sugar processes sugarcane grown by its farmers and sells that refined sugar through a member-owned agricultural cooperative, United Sugars. (D.I. 18 ¶ 2; *see also* D.I. 16 ¶ 2). United Sugars is incorporated in Minnesota and maintains its principal place of business in Minnesota. (D.I. 16 ¶ 3). The sugar processed by U.S. Sugar and sold through United Sugars reaches many states on the East Coast,[2] including Delaware. (D.I. 1 ¶¶ 3 & 31; *see also* D.I. 16 ¶ 4).

One of United Sugars's direct competitors is Imperial Sugar, a Texas company with offices in Port Wentworth, Georgia and Sugar Land, Texas. (D.I. 17 ¶ 3; *see also* D.I. 1 ¶ 11 (Imperial Sugar's headquarters in Sugar Land, Texas) & ¶¶ 40-47 (United Sugars and Imperial Sugar direct competitors)). Instead of growing its own sugarcane, Imperial Sugar receives imported raw sugar

---

[1]     Defendants' motion also requested that trial be expedited and held sometime in April 2022 in the event the Court declines to transfer the case to the Southern District of Georgia. (*See* D.I. 13; *see also* D.I. 14 at 16). The Court has already set a trial date in that timeframe. (*See* D.I. 38 at 13:15-14:7; *see also* D.I. 21).

[2]     The Government refers to the geographic area at issue in this lawsuit as the "Southeastern United States," which apparently includes Delaware based on the U.S. Census definition of "South Atlantic" states. (*See, e.g.*, D.I. 1 ¶¶ 3 & 26; *see also* D.I. 30 at 1 & 1 n.1). The categorization of Delaware as a "southern" state seems counterintuitive and, as such, the Court declines to use Plaintiff's terminology.

and processes the sugar in its Port Wentworth sugar refinery.  (*Id.* ¶¶ 3 & 5).  The Port Wentworth refinery is the only sugar refinery that Imperial Sugar owns.  (*Id.* ¶ 3).  The sugar processed and sold by Imperial Sugar reaches many states on the East Coast, including Delaware.  (D.I. 1 ¶¶ 3 & 31; *see also* D.I. 17 ¶ 6).  Imperial Sugar is wholly owned by Louis Dreyfus, a Delaware limited liability company.[3]  (D.I. 17 ¶ 7).

On March 24, 2021, U.S. Sugar and Louis Dreyfus entered into an Asset Purchase Agreement ("the Agreement"), whereby U.S. Sugar would acquire all of Imperial Sugar's assets – including the Port Wentworth facility – for $315 million.  (D.I. 1 ¶ 13; *see also* D.I. 33, Ex. 1 (Asset Purchase Agreement)).  Following execution of the Agreement, U.S. Sugar, Imperial Sugar and Louis Dreyfus also entered into "a side letter agreement" with United Sugars, which apparently provided that United Sugars would comply with certain obligations set forth in the Agreement. (D.I. 1 ¶ 13).  United Sugars then entered into an agreement with its four members (including U.S. Sugar), which provided that United Sugars would market all of the sugar produced by Imperial Sugar if the acquisition is allowed to proceed.  (*Id.*).  U.S. Sugar's acquisition of Imperial Sugar would apparently leave only two major sugar producers – United Sugars and Domino – in control of roughly 75% of the sugar sales in the Southeastern United States.  (D.I. 1 ¶ 4).  Under the Asset Purchase Agreement, the Outside Date is September 24, 2022 but the parties can mutually agree to extend this date.  (*See* D.I. 15 ¶ 11; *see also* D.I. 33, Ex. 1 § 10.1(b)).

On November 23, 2021, the United States of America ("Plaintiff" or "the Government") initiated this antitrust action under Section 7 of the Clayton Act, ultimately seeking to prevent U.S. Sugar from acquiring Imperial Sugar.  (*See generally* D.I. 1).  On December 3, 2021, Defendants

---

[3]     Louis Dreyfus Company is owned by Louis Dreyfus Company B.V., a foreign company headquartered in the Netherlands.  (D.I. 17 ¶ 7).

filed a motion to transfer this action to the Southern District of Georgia, where Imperial Sugar's Port Wentworth refinery (*i.e.*, the main target asset) is located.  (*See* D.I. 13, 14, 15, 16, 17 & 18). The Government opposes transferring this action.  (*See* D.I. 30, 32 & 33).  Expedited briefing on Defendants' motion was completed on December 17, 2021.  (*See* D.I. 37).

## II.   <u>LEGAL STANDARD</u>

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'"  *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)).  Plaintiff's choice of location in bringing the action "should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In determining whether an action should be transferred under § 1404(a), the Third Circuit has recognized that:

> courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted).  The *Jumara* court went on to describe twelve "private and public interests protected by the language of § 1404(a)."  *Id.*  The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly

3

> limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. The Third Circuit has held, however, that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III.   <u>ANALYSIS</u>

As an initial matter, the Court addresses the threshold inquiry under § 1404(a) – *i.e.*, whether this action might have originally been brought in the transferee district. Defendants argue that this action could have originally be brought in the Southern District of Georgia, which is where the target company's only sugar refinery is located. (D.I. 14 at 6). The Government does not dispute that the case could have originally been brought in that district. (*Compare* D.I. 14 at 6 n.2 (Defendants noting that the Government was still mulling the threshold issue), *with* D.I. 30 (the Government's brief, which is silent on the threshold issue)). Indeed, the Government's opposition is focused on the private and public interest factors under *Jumara*. Thus, in the Court's view, the threshold inquiry under § 1404(a) is satisfied and the only issue before the Court is whether to

exercise its discretion under § 1404(a) to transfer the case to the Southern District of Georgia.  The Court addresses the *Jumara* factors in turn below.

        1.      <u>Plaintiff's Forum Preference</u>

This factor weighs against transfer.  "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed."  *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer."[4]  *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Defendants recognize that the Government's choice to litigate in Delaware weighs against transfer.  (D.I. 14 at 13).  Defendants nevertheless argue that this choice should be given "little deference" because Delaware is "a forum far from the center of the alleged 'acute harm.'"  (*Id.*). In Defendants' view, the relevant forum is the Southern District of Georgia, which is where Imperial Sugar's main asset is located and a venue much closer to the "focus" of this case.  (*See id.* at 15).  According to Defendants, Delaware has "no meaningful ties" to the controversy at issue here and, as such, the Government's preferred forum is entitled to less weight than it may otherwise be afforded.  (*See id.* at 13-15; *see* D.I. 37 at 1).  In support of their arguments, Defendants primarily rely on a case from the District of Columbia, which states that a plaintiff's choice of forum should be given less deference if the forum has an insufficient nexus to the case.  *See FTC v. Illumina, Inc.*, No. 21-873 (RC), 2021 WL 1546542, at *6 (D.D.C. Apr. 20, 2021).

---

[4]      No Defendant has disputed that venue is proper here or that this Court may exercise personal jurisdiction over all Defendants.

The Government argues that its choice of forum is "paramount," particularly in antitrust cases where there is a specific venue statute (15 U.S.C. § 22) that is designed to make it easier for the Government (and others) to litigate these types of disputes. (*See* D.I. 30 at 6-9). That is, as long as its choice of venue is "legitimate and rational," the choice should be afforded great deference. (*Id.* at 6-7). And here, the decision to file this case in Delaware is purportedly legitimate and rational because the proposed acquisition is between two Delaware companies and governed by an Asset Purchase Agreement that requires any disputes relating to the acquisition be litigated in Delaware. (*Id.* at 7; *see also* D.I. 33, Ex. 1 § 12.20). In the Government's view, these facts undercut any argument by Defendants that Delaware has no connection to this dispute (or that Delaware is an inconvenient forum to litigate this dispute). (D.I. 30 at 7). Additionally, the Government argues that the geographic area relevant to the present dispute includes Delaware because the proposed acquisition would result in United Sugars controlling an "overwhelming percentage" of sugar sales in Delaware. (*Id.* at 8).

The Court agrees that the Government's choice of forum should be given great deference. Section 12 of the Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business . . . ." 15 U.S.C. § 22. This venue provision was enacted to afford some flexibility in selecting a venue for those attempting to enforce antitrust laws. *See United States v. Nat'l City Lines*, 334 U.S. 573, 586-87 (1948). In fact, because of this provision, "some courts have found that the United States' choice of forum in antitrust cases should receive heightened respect." *United States v. Energy Sols., Inc.*, No. 16-1056-GMS, 2016 WL 7387069, at *2 (D. Del. Dec. 21, 2016).

Although Defendants argue that the Government's choice of forum should be afforded minimal weight because Delaware is not particularly connected to the present dispute, the Court finds there are sound reasons for the Government's choice. First, the proposed acquisition of Imperial Sugar by U.S. Sugar is a transaction between two companies incorporated in Delaware – U.S. Sugar and Louis Dreyfus. (*See, e.g.*, D.I. 14 at 4; D.I. 30 at 3-4).[5] The Court also finds it important that U.S. Sugar and Louis Dreyfus agreed to litigate any disputes relating to the Asset Purchase Agreement in Delaware. (D.I. 33, Ex. 1 § 12.20). Although this does not mean that they agreed to litigate antitrust disputes brought by the Government here as well, the agreement does lend reason to the Government's choice of Delaware as its preferred forum. Indeed, these facts are very similar to those in *United States v. Energy Solutions, Inc.*, where the Government's choice of Delaware was entitled to deference:

> The District of Delaware does have an interest in the subject matter and the parties because the Defendants chose to incorporate here and selected this forum as the District to litigate disputes resulting from their merger agreement. Even though that forum selection clause does not apply to the present action brought by the Government, it still ties the parties to this District.

2016 WL 7387069, at *2 (internal citations omitted).

Additionally, this Court believes that the Government has a further basis for this forum because the proposed acquisition will allegedly impact sugar sales (and competition) here in Delaware. (*See* D.I. 30 at 8-9). Indeed, the Government asserts that, because United Sugars and Imperial Sugars are the two largest sugar sellers in Delaware, the proposed acquisition would result in United Sugars controlling most sugar sales in Delaware if allowed to proceed. (*Id.* at 8). Finally,

---

[5]     Attempting to downplay this critical fact, Defendants point to the presence of two non-Delaware entities – Imperial Sugar and United Sugars – as additional Defendants in this case. (*See* D.I. 14 at 14-15; *see also* D.I. 37 at 2). The Court does not believe that the presence of these non-Delaware entities automatically lessens the deference that should be afforded to the Government's choice of forum.

the Government's Antitrust Division is headquartered in Washington, D.C., and Delaware is apparently the closest forum where venue and personal jurisdiction are proper for all Defendants – an assertion that Defendants do not dispute.  (*Id.* at 9).

In sum, although Defendants contend that Delaware "has no meaningful ties to the controversy," the Court has found several sound reasons for the Government to choose Delaware as the forum to litigate this dispute.  This Court therefore does not see a distinction here that justifies affording less weight to the Government's choice of forum.  The Government's choice to litigate in Delaware remains entitled to paramount consideration.[6]

###### 2.     Defendants' Forum Preference

This factor favors transfer.  Defendants' interest in having this case transferred to the Southern District of Georgia is apparent.

###### 3.     Whether the Claims Arose Elsewhere

This factor is neutral.  As to where the claim(s) arose, both sides generally agree that the Court should look to "where the corporate decisions underlying th[e] claims were made."  *F.T.C. v. Graco Inc.*, No. 11-02239 RLW, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012); *see also Energy Sols.*, 2016 WL 7387069, at *4.  That is, in the context of this proposed acquisition, the Court should at least evaluate where the acquisition was negotiated, drafted and executed.  *See Energy Sols.*, 2016 WL 7387069, at *4.  The Court may also take into account where Defendants' headquarters are located.  *See Graco Inc.*, 2012 WL 3584683, at *5.

---

[6]     This Court generally agrees with the reasoning set forth in *Burroughs Wellcome*, where Judge Stapleton found that the Third Circuit's rule that a plaintiff's choice is of paramount consideration is "an across-the-board rule favoring plaintiff's choice of forum." 392 F. Supp. at 762-63; *see also VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018).

Defendants argue that this factor weighs in favor of transfer because (1) none of the negotiations, discussions or meetings relating to the proposed acquisition took place in Delaware and (2) the negotiations involved site visits and plant tours of the Imperial Sugar refinery in Port Wentworth, Georgia.  (D.I. 14 at 8).  Moreover, in Defendants' view, that the main asset to be acquired in the transaction is located in Port Wentworth, along with a purportedly key due diligence witness for Imperial Sugar, further suggest that the claim arose in the Southern District of Georgia.  (*Id.*).  The Government argues that Defendants have failed to offer any evidence that the proposed acquisition was actually negotiated in Georgia.  (D.I. 30 at 10).  Instead, the current record suggests that negotiations occurred mainly in Florida and New York City.  (*Id.* (citing Defendants' declarations and internal documents)).  The Government also notes that none of the Defendants have corporate headquarters located in Georgia and only one person involved in the deal is located there.  (*Id.*).  And, as the Government again points out, this all stands in contrast to the fact that the proposed transaction is between two Delaware companies and governed by a contract that makes Delaware the exclusive forum to litigate any disputes over the transaction.  (*Id.*).

The Court cannot conclude the claim here arose in the Southern District of Georgia.  The evidence suggests that negotiations primarily occurred in Florida and New York – not Georgia or Delaware – and there is no evidence indicating where the agreement was drafted or executed.  Similarly, no Defendant maintains its principal place of business in Georgia (or Delaware).  Based on the current record, the Court concludes that this factor is largely neutral.  *See Energy Sols.*, 2016 WL 7387069, at *4 (finding this factor largely neutral where record did not "definitively indicate that negotiations occurred in the [transferee district]" but also "d[id] not indicate where a majority of the negotiations took place").

9

      4.       Convenience of the Parties as Indicated by Their Relative Physical
             and Financial Condition

This factor is neutral.  Determining convenience of the parties requires the Court to consider:  (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.  *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).  When a party seeking transfer is a Delaware corporation, it "must prove that litigating in Delaware would impose a unique or unusual burden on [its] operations."  *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (alteration in original) (internal quotation marks and citation omitted); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." (internal quotation marks and citation omitted) (alteration in original)).

Here, Defendants argue that the Southern District of Georgia is more convenient than this District for the parties because no company has employees in Delaware, whereas Georgia is where the to-be acquired Port Wentworth facility is located and it is also closer to U.S. Sugar's headquarters in Florida.  (D.I. 14 at 9).  Additionally, "critical employee witnesses" for Imperial Sugar are purportedly located in the Southern District of Georgia and "critical employee witnesses" for U.S. Sugar are located in Florida.  (*Id.*).  As for United Sugars and Louis Dreyfus, Defendants argue that they will need to travel regardless of forum but that their employees travel

to Georgia (and Florida) regularly.  (*Id.*; *see also* D.I. 17 ¶ 11; D.I. 16 ¶ 5).  The Government responds that United Sugars and Louis Dreyfus have headquarters closer to Delaware than Georgia.  (D.I. 30 at 12 (Louis Dreyfus headquartered in Connecticut and United Sugars headquartered in Minnesota)).  Moreover, in the Government's view, Louis Dreyfus and U.S. Sugar face a particularly "uphill climb" in showing that Delaware is inconvenient because they chose to incorporate in Delaware (and agreed to litigate disputes about the transaction here).  (D.I. 30 at 11).  Additionally, the Government asserts that all Defendants are large corporations with national (or international) presences, and they all have "more than adequate" resources to litigate in this District.[7]  (*Id.* at 12).  And as for Imperial Sugar, the Government argues that its operations in Georgia should not be dispositive of this factor when the other three Defendants (and Plaintiff) have no such operations there.  (*Id.*).

On this factor, the Court begins its analysis with U.S. Sugar and Louis Dreyfus.  Given that U.S. Sugar and Louis Dreyfus are incorporated in Delaware, they must demonstrate that litigating here "would impose a unique or unusual burden on [their] operations."  *Graphics Props. Holdings*, 964 F. Supp. 2d at 325.  Defendants fail in this regard.  There is no articulation or specific showing of why litigating here would impose a unique or unusual hardship on U.S. Sugar or Louis Dreyfus (*e.g.*, diverting resources, etc.).  Defendants simply argue that Georgia is more convenient because it is closer to U.S. Sugar's headquarters (and employees).  Yet the decision by U.S. Sugar and Louis Dreyfus to incorporate in Delaware and their agreement to litigate disputes relating to proposed acquisition here strongly suggest that this District is not an inconvenient forum.  *See Energy Sols.*, 2016 WL 7387069, at *4 ("Both Defendants are incorporated in Delaware and the Purchase Agreement reached between the two parties designates Delaware as the venue where any

---

[7]     Defendants do not dispute this characterization.

disputes arising out of the agreement should be litigated. . . . [T]he parties' willingness to travel to and litigate in Delaware, made apparent by the forum selection clause, undermines any argument Defendants could make that Delaware is an inconvenient forum." (citations omitted)).

As for the two Defendants not incorporated in Delaware, the Court is unpersuaded that the Southern District of Georgia is any more convenient than this District for United Sugars. United Sugars is a Minnesota company with its headquarters in Minnesota, which is closer to Delaware than Georgia.[8]  And as for Imperial Sugar, it does appear that Georgia may be more convenient given that its sugar refinery (and the main target asset) is located there, along with several hundred Imperial Sugar employees.  That being said, that the proposed transferee forum may be more convenient for one out of a number of Defendants does not mean that this factor favors transfer, particularly where all Defendants have more than adequate financial resources to litigate in either forum.  This is true for the Government as well – although Delaware is closer to Washington, D.C. than the Southern District of Georgia, the Government is likewise equipped with vast resources and could readily litigate in either forum.  Thus, the Court ultimately finds that litigating in Delaware is roughly as convenient as litigating Georgia, and this factor is neutral.

5.     Convenience of the Witnesses

This factor is neutral.  This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")).  "[W]itnesses who are employed by a party carry no weight" because "each party is able, indeed, obligated to procure

---

[8]     In fact, although no Defendant maintains headquarters in Delaware, the same is true in Georgia as well – no Defendant has a principal place of business in Georgia either.

the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I*, 842 F. Supp. 2d at 757.

Defendants assert that this factor "strongly supports transfer" because the most relevant non-party witnesses will likely be customers in Georgia and its bordering states. (D.I. 14 at 9-10). Defendants also argue that, in response to the Government's claim that competition in Georgia will be diminished if the acquisition is allowed to proceed, evidence from other sugar companies in the area will be "a central issue at trial." (*Id.* at 10). After identifying a handful of such sugar companies, Defendants assert that "it will be far easier for witnesses from these companies to testify at trial in Georgia than to testify in Delaware." (*Id.*). The Government responds that this factor only carries weight when third-party witnesses may actually be unavailable in one of the fora but, here, the Clayton Act ensures that such witnesses will generally be available in both. (D.I. 30 at 13). That is, the Clayton Act explicitly provides that trial subpoenas may be served in any judicial district. *See* 15 U.S.C. § 23 ("In any suit, action, or proceeding brought by or on behalf of the United States subpoenas for witnesses who are required to attend a court of the United States in any judicial district in any case, civil or criminal, arising under the antitrust laws may run into any other district . . . ."). In the Government's view, then, any third-party witnesses will "likely be as available for trial in Delaware as they are in Georgia." (D.I. 30 at 13).

No party has identified any witness who would be unavailable for trial in Delaware, which is the main consideration under this *Jumara* factor. *See Jumara*, 55 F.3d at 879. As to the third-party witnesses, it is generally true that the Clayton Act provides for nationwide service of trial subpoenas, but it is still important to consider the convenience of trial in Delaware versus Georgia

13

for third-party witnesses.  Defendants have identified a number of competitor sugar companies who may be called upon to offer testimony at trial, but Defendants have made no real showing that Georgia is more convenient than Delaware for any of them (apart from attorney argument). Similarly, the Government asserts that customers in Delaware, Maryland, Virginia, and West Virginia could also be relevant witnesses at trial and that Delaware would be more convenient than Georgia, but this is also largely based on attorney argument.  (D.I. 30 at 14).  Ultimately, the Court is left with an argument by Defendants that Georgia would be a more convenient forum for potential third-party sugar companies, alongside an argument by the Government that Delaware would be a more convenient forum for potential customer witnesses.  On the state of the current record, the Court cannot conclude that one forum is any more convenient than the other under this factor.  Therefore, this factor is neutral.

6.    Location of Books and Records

This factor slightly favors transfer.  *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum."  *Jumara*, 55 F.3d at 879.  Defendants argue that none of their relevant books and records are located in Delaware and are instead "primarily located in Georgia, Florida, and Texas."  (D.I. 14 at 11).  Defendants also assert that the Southern District of Georgia is more convenient because this litigation will focus in part on "U.S. Sugar's strategic goals for the acquisition, which include improving the capacity, efficiency, and operations" of Imperial Sugar's refinery.  (*Id.*).  In Defendants' view, site visit(s) to that facility may be necessary for expert witnesses and "perhaps even the Court."  (*Id.*).  Therefore, the Southern District of Georgia is purportedly more convenient.  The Government argues that this factor is neutral, arguing that the state of technology today minimizes any burden with producing

documents and further arguing that "critical evidence" is kept closer to Delaware than Georgia. (D.I. 30 at 15). Additionally, the Government argues that it should not matter that the Imperial Sugar refinery is located in the Southern District of Georgia because "no court has credited an efficiencies defense in an antitrust merger case, much less approved an anticompetitive merger on the basis of such a defense." (*Id.*).

The Third Circuit has instructed that the relevant consideration here is whether the evidence could not be produced in the competing fora. *See Jumara*, 55 F.3d at 879. Defendants have largely failed to demonstrate that some evidence could not be produced here. For documents, many of which have already been produced to the Government and with the state of technology in litigation today and the ease with which documentary evidence can be produced electronically, the Court finds that this factor should be afforded minimal weight. *See, e.g.*, *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150-CFC, 2020 WL 2113528, at *4 (D. Del. May 4, 2020); *Intellectual Ventures I*, 842 F. Supp. 2d at 759. That being said, there are apparently some documents located in Georgia. (D.I. 14 at 11; *see also* D.I. 17 ¶ 12). And as for the Imperial Sugar facility in Port Wentworth, although it is true that it is located in the Southern District of Georgia, the Court has not been persuaded that the building itself constitutes any particularly relevant evidence.[9] Therefore, this factor weighs in favor of transfer, but only slightly.

7.   Enforceability of the Judgment

This factor is neutral as judgments from this District and the Southern District of Georgia would be equally enforceable.

---

[9]   The Court certainly does not believe a site visit is required in this case (*i.e.*, a site visit by the trial court).

8.      Practical Considerations

This factor is neutral.  The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.  Defendants do not address this factor, and the Government argues that this factor weighs against transfer.  (*See* D.I. 30 at 15-17).  In the Government's view, litigating this case in Delaware imposes no significant burden on Defendants.  (*See id.* at 16 ("U.S. Sugar and Louis Dreyfus are incorporated in Delaware, United and Imperial are the largest sellers of sugar to customers in Delaware, and all Defendants have access to ample financial resources.")).  Litigating this case in the Southern District of Georgia, however, apparently imposes a more significant financial burden on the Government (located in D.C.), United Sugars and Louis Dreyfus (located closer to Wilmington than Savannah), as well as on third parties.  (*Id.* at 16-17).  The Government also again reiterates the forum-selection clause governing the Asset Purchase Agreement, which obligates U.S. Sugar and Louis Dreyfus to litigate their disputes over the proposed acquisition here in Delaware.  (*Id.* at 16).  In the Court's view, these concerns "have been raised, in the same way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm 3DS Innovations LLC v. SK Hynix, Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015).  Therefore, because there is no broader public benefit to this case proceeding in this Court versus the Southern District of Georgia (or vice versa), this factor is neutral.  *See W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

9.      Relative Administrative Difficulty Due to Court Congestion

This factor is neutral.  Although there may be general differences between the District of Delaware and the Southern District of Georgia in the median length of time between filing and

16

trial (or between filing and disposition) for civil cases,[10] any such differences are rendered moot by this Court already having set aside time for trial in April 2022.[11]  (D.I. 38 at 13:15-14:7).  In fact, there is a trial date certain and soon in this District, whereas it is unknown when trial would occur if this case were transferred to the Southern District of Georgia.  In the Court's view, this factor is neutral.  (That trial has already been set here may even weigh against transfer, particularly because it is unknown when the Southern District of Georgia could schedule trial).

### 10.    Local Interest in Deciding Local Controversies at Home

This factor is neutral.  Defendants argue that this factor favors transfer because "[t]he Southern District of Georgia has a strong interest in overseeing a case that arises in that District and that will allegedly most directly affect that District, state, and surrounding area."  (D.I. 14 at 11).  In particular, Defendants emphasize that there are roughly 400 employees who work at the Imperial Sugar refinery in Port Wentworth who allegedly will be directly affected by the proposed acquisition and its attendant objectives.  (*Id.*).  Defendants also contend that a Georgia court would be "in the best position" to decide the rights and interests of Georgia sugar customers (*i.e.*, those customers that the Government contends will face particularly acute harm from the proposed acquisition).  (*Id.* at 12).  In response, the Government argues that this factor is neutral because the interests implicated by this case are not local – to Georgia or elsewhere.  (D.I. 30 at 17-18).  Instead,

---

[10]     The Court takes judicial notice of the most recent Judicial Caseload Profiles, as of March 31, 2021, which indicate that, in the District of Delaware, the median length of time between filing and trial for civil cases is 28.7 months and the median length of time between filing and disposition in civil cases is 7.3 months.  In the Southern District of Georgia, the median length of time in civil cases between filing and disposition is 8.9 months, and there is no data available for the median length of time between filing and trial.  The March 2021 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf.

[11]     For similar reasons, any differences in the number of pending cases per judgeship between the two Districts have no bearing on this factor.

the proposed acquisition would purportedly diminish competition between sugar producers throughout many states on the East Coast (including Delaware), resulting in higher prices and lesser quality sugar. (*Id.* at 18). Additionally, the Government points out that of the four Defendants, only Imperial Sugar has a facility in Georgia – but is nevertheless headquartered in Texas. (*Id.*). The remaining companies have national and international presences. (*Id.*).

The Court finds that this factor is neutral. Although the proposed acquisition concerns a sugar refinery located in Georgia and owned by one of the Defendants, the Court ultimately finds that the interests implicated in this case are not limited to Georgia or the immediately surrounding area. If U.S. Sugar is permitted to acquire Imperial Sugar, there appears to be a real risk that reduced competition (and resulting economic harm) will follow in a number of East Coast states, including Delaware. *See Energy Sols.*, 2016 WL 7387069, at *6 (finding local interest factor neutral where harm that could result from proposed merger "will be felt by the firms['] various customers, distributed throughout 36 states, that rely on the firms for their commercial low-level radioactive waste disposal needs"). Thus, in the Court's view, this factor is neutral.

### 11. Public Policies of the Fora

Defendants have not addressed this factor, and the Government suggests this factor weighs against transfer. (D.I. 30 at 18-19). The Court generally agrees that this factor weighs against transfer, albeit slightly, because several Defendants are Delaware corporations and public policy encourages Delaware corporations to resolve disputes in Delaware courts. *See, e.g.*, *Graphics Props. Holdings Inc.*, 964 F. Supp. 2d at 331 (even where only one party is a Delaware corporation, public policy encouraging Delaware corporations to resolve disputes in Delaware weighs against transfer). There is no similar argument for the Southern District of Georgia as no party is a Georgia company or a company with its principal place of business in Georgia.

12.     Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases

The parties agree that this factor is neutral as the Government's claims arise under federal antitrust laws and the familiarity of the respective districts with state law is not applicable.

13.     Balancing the Private and Public Factors

After balancing the twelve *Jumara* factors, the Court concludes that this case should not be transferred to the Southern District of Georgia.  Eight factors are neutral, and two factors weigh in favor of transfer, with one favoring transfer only slightly.  Two factors weigh against transfer, including the Government's choice of this forum, which is to be given paramount consideration. Looking at the factors together and giving each its appropriate weight, Defendants have failed to meet the heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to transfer the case to the United States District Court for the Southern District of Georgia pursuant to 28 U.S.C. § 1404(a) is DENIED. An appropriate order will follow.