# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>v.<br><br>UNITED STATES SUGAR CORPORATION,<br>UNITED SUGARS CORPORATION,<br>IMPERIAL SUGAR COMPANY, and<br>LOUIS DREYFUS COMPANY LLC,<br><br>        *Defendants*. | Civil Action No. 1:21-cv-01644-MN |

## DECLARATION OF JONATHAN KANTER

I, Jonathan Kanter, Assistant Attorney General for the Antitrust Division at the Department of Justice (DOJ), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my duties.

1. I am employed at DOJ, located at 950 Pennsylvania Avenue, N.W., Washington, D.C., 20530. I was confirmed as Assistant Attorney General for the Antitrust Division by the United States Senate on November 16, 2021. As Assistant Attorney for the Antitrust Division, I am responsible for overseeing the Antitrust Division and the DOJ's enforcement of the antitrust laws.

2. As Assistant Attorney General, I have been delegated the responsibility by the Attorney General to determine whether to bring antitrust actions on behalf of the United States of America, *see* 28 C.F.R. § 0.40. Moreover, I have been specifically delegated authority to assert

applicable privileges in antitrust litigation by the Deputy Attorney General, who is authorized pursuant to Department of Justice regulations, *see* 28 C.F.R. §§ 16.21 *et seq.*, to determine whether Department of Justice information will be withheld in response to subpoenas and other demands. The delegation provides that any assertion of privilege be in accordance with the guidelines established in 28 C.F.R. § 16.26.

3. The Hart-Scott-Rodino Antitrust Improvements Act (HSR Act) requires businesses exceeding certain sizes to report proposed corporate transactions valued above specified thresholds to the DOJ and Federal Trade Commission (FTC) so that the agencies may consider whether such transactions comport with federal antitrust laws. When the Antitrust Division is concerned that the effect of a proposed transaction "may be substantially to lessen competition, or to create a monopoly," *see* 15 U.S.C. § 18, the Antitrust Division will open an investigation. In my role as Assistant Attorney General, I oversee all such investigations. If I ultimately believe a proposed transaction will violate the antitrust laws and the harm to competition that the merger would cause cannot be ameliorated through other alternative remedies, I may decide to file an action in federal court seeking to block the proposed transaction.

4. In the course of Antitrust Division investigations into whether a proposed transaction would violate the antitrust laws, Antitrust Division attorneys will often communicate with third-party market participants and other federal agencies with expertise or regulatory jurisdiction over the products and industries at issue in the transaction. President Biden recently issued an Executive Order on Promoting Competition in the American Economy that expressly encouraged the Antitrust Division to coordinate its investigations with other federal agencies that have overlapping industry expertise or jurisdiction. Exec. Order No. 14036, 86 Fed. Reg. 36987

(July 9, 2021). These communications help the investigating attorneys better understand the products and industries at issue and determine whether the proposed transaction is likely to violate the antitrust laws.

5. I understand the Antitrust Division's investigation into United States Sugar Corporation's proposed acquisition of Imperial Sugar Company began in March 2021 (the Proposed Acquisition). After Antitrust Division attorneys opened their investigation, Antitrust Division attorneys reached out to the Department of Commerce (DOC) and the Department of Agriculture (USDA) to better understand regulations concerning the supply and sale of sugar in the United States.

6. As part of their discussions with the USDA, an Antitrust Division attorney, Ms. Jill Ptacek, provided questions related to the Proposed Acquisition to attorneys, economists, and other employees at the USDA. In response to these questions, I understand two USDA employees prepared draft responses.

7. I have reviewed documents containing both Ms. Ptacek's questions as well as documents containing the proposed responses to Ms. Ptacek's questions from two USDA employees. I conclude that documents containing the questions posed by the Antitrust Division attorney and/or the proposed responses from two USDA employees are pre-decisional, deliberative, and harm will result from their disclosure. Therefore, I assert the deliberative process privilege for documents containing this material.

8. Ms. Ptacek's questions reflect her impressions, opinions, and judgments about issues relevant to the Antitrust Division's investigation of the Proposed Acquisition at the time the questions were written in April 2021. Because the USDA employees' proposed responses were drafted to respond to Ms. Ptacek's questions, they also disclose Ms. Ptacek's impressions

and judgments at that time concerning the Proposed Acquisition. The factual material contained in Ms. Ptacek's questions was deliberately selected for inclusion by Ms. Ptacek, and the selection of such facts itself reflects the thought processes of Ms. Ptacek as to the types of facts relevant to possible prosecutorial decisions and antitrust enforcement policy. To the extent there are facts contained in the proposed responses from two USDA employees, those facts are inextricably intertwined with Ms. Ptacek's impressions and judgments of her investigation into the Proposed Acquisition.

9. Ms. Ptacek's questions and the proposed responses from two USDA employees were created at the beginning of the Antitrust Division's investigation and do not reflect the ultimate reasons the Antitrust Division decided to bring this action to block the Proposed Acquisition. As a result, the disclosure of this written material would provide an incomplete and misleading view of the Antitrust Division's rationale for bringing the present case.

10. Requiring the disclosure of this material would also have a chilling effect on communications between the DOJ and other executive federal agencies, which would make it more difficult for Antitrust Division attorneys to do their jobs in the future. The Antitrust Division regularly benefits from the expertise and experience of our colleagues at other federal agencies, but the disclosure of this material would require Antitrust Division attorneys to be more cautious in their communications with federal employees outside the DOJ going forward. Similarly, employees at other federal agencies would be reticent to share their expertise with Antitrust Division attorneys out of fear that their communications would not remain confidential. More broadly, this would discourage federal employees from coordinating across executive agencies to reach the best outcomes for the federal government as a whole.

11. For the reasons explained above, I assert the deliberative process privilege over documents containing Ms. Ptacek's questions and/or the proposed responses from USDA employees.

Pursuant to 28 U.S.C. § 1746, and under penalty of perjury, I declare the foregoing is true and correct to the best of my knowledge.

_2/4/22_
Date

_Jonathan Kanter_
Jonathan Kanter
Assistant Attorney General for the Antitrust Division
United States Department of Justice

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>v.<br><br>UNITED STATES SUGAR CORPORATION, UNITED SUGARS CORPORATION, IMPERIAL SUGAR COMPANY, and LOUIS DREYFUS COMPANY, LLC.<br><br>    *Defendants.* | Civil Action No. 1:21-cv-01644-MN |

**DECLARATION OF DOUGLAS MCKALIP
ASSERTING THE DELIBERATIVE PROCESS PRIVILEGE**

I, Douglas McKalip, Senior Advisor in the Office of the Secretary within the United States Department of Agriculture ("USDA"), declare that the following statements are true and correct to the best of my knowledge and belief, that they are based upon my personal knowledge and on information supplied to me by USDA employees, and that they are provided in conjunction with USDA's assertion of the deliberative process privilege in the above-captioned case:

    1.    I am employed by the USDA, located at 1400 Independence Avenue, S.W., Washington, DC 20250. My service in the capacity of Senior Advisor began on March 28, 2021. My responsibilities include issues relating to trade, national security, research, animal and plant health, and bioproducts.

    2.    The USDA is mandated by Congress to monitor and regulate domestic marketings and foreign imports of raw and refined sugar. Through the Commodity Credit Corporation, USDA provides marketing assistance loans to sugar processors. *See* 7 U.S.C. § 7272. The USDA

1

also establishes marketing allotments for domestically-produced sugar. *See* 7 U.S.C. §§ 1359bb *et seq.* Finally, in conjunction with the United States Trade Representative, USDA manages a quota system for import tariffs for foreign sugar entering the United States. *See* U.S. Harmonized Tariff Schedule (HTS), Chapter 17, Additional U.S. Note 5, paragraph (a)(i); 7 U.S.C. § 1359kk; 19 U.S.C. § 3601(d)(3); Presidential Proclamation 6763 (60 FR 1007). USDA staff personnel in Farm Production and Conservation Business Center ("FPAC-BC") and Trade and Foreign Agricultural Affairs ("TFAA") help implement these programs.

3. I understand that USDA has been served with discovery requests in the above-captioned litigation and documents from USDA files responsive to those requests have been produced. I further understand that certain documents have been withheld from production, including (1) internal USDA documents and communications assessing United States Sugar Corporation's ("U.S. Sugar's") proposed acquisition of Imperial Sugar Company (the "proposed acquisition") and (2) internal USDA documents and communications discussing potential responses to incoming public and industry correspondence referring to the proposed acquisition. I have reviewed representative samples of the documents that have been withheld from production. For the reasons stated below, I conclude that these documents are pre-decisional, deliberative, and harm will result from their disclosure. Therefore, I assert a deliberative process privilege for these documents.

4. In April 2021, USDA received requests from attorneys in the Department of Justice ("DOJ") Antitrust Division for information on the sugar industry to assist their investigation of the proposed acquisition. While USDA staff engaged with the DOJ attorneys, USDA senior leaders discussed internally whether USDA would need to develop a formal view on the proposed acquisition and DOJ's investigation. By October 2021, I, and other senior leaders at USDA, were faced with a decision of whether to take a public position if DOJ attempted to block the proposed acquisition and, if so, what that position should be.

5. Prior to making that decision, I and other senior leaders at USDA discussed the issue with USDA staff and attorneys from USDA's Office of the General Counsel ("OGC"). USDA staff provided analysis, comments, and recommendations both in writing and verbally. The written documents created by USDA staff include their own opinions and judgments about the sugar industry and the proposed acquisition. Any factual statements contained in these documents are inseparable from the opinions and judgments of USDA staff; the facts that USDA staff chose to include is itself an exercise of their judgment. The purpose of these documents was to assist me and other senior leaders at USDA with reaching a decision. Ultimately, I and other senior leaders at USDA decided that USDA would take no public position on DOJ's attempt to block the proposed acquisition.

6. These internal deliberations were kept confidential in order to maintain the integrity of USDA's decision-making process, which often requires carefully weighing multiple opposing interests and consideration of confidential business information obtained by USDA from sugar industry participants. Confidentiality encourages USDA staff to provide honest and forthright assessments, and permits decisionmakers such as myself to consider all possible positions before deciding USDA policy. Disclosure of the internal, confidential documents that ultimately led USDA to take no public position on DOJ's attempt to block the proposed acquisition would chill free and open discussion within USDA on matters of public policy and, importantly, threaten the willingness of industry participants to freely share confidential market intelligence with USDA staff that is key to USDA staff's understanding of current market conditions. In addition, such disclosure will discourage future cooperation between USDA and DOJ on investigations of anticompetitive conduct in the agricultural sector and other public

policy matters.[1]

7. After the proposed acquisition was announced publicly, the USDA began receiving correspondence from the public and industry participants that mentioned or related to the proposed acquisition. For example, USDA received correspondence from various industry participants either supporting or opposing the proposed acquisition. In addition, USDA received inquiries from the parties to the transaction themselves on how USDA programs would apply to the combined business if the transaction was consummated.

8. After any such correspondence is received, USDA staff communicate internally regarding the appropriate response and prepare draft response letters. In the internal draft responses and related communications, USDA staff provide opinions and recommendations on what the response should be. USDA senior management reviews this analysis and then makes a decision on the final response to send to USDA senior leadership for their review and clearance to provide to the sender. Afterwards, USDA senior leaders approve a response, it is signed by the appropriate member of the USDA leadership, and the response is sent.

9. These internal drafts and related communications are kept confidential to encourage USDA staff to provide honest and forthright assessments and allow USDA senior leaders to incorporate a broad range of views of USDA staff before committing USDA to a position in a response letter to a member of the public or industry. Disclosure of internal communications and drafts relating to external USDA communications would chill free and open discussion within USDA on matters of public policy.

---

[1] Recently, the Secretary of Agriculture and Attorney General jointly announced a specific focus on ensuring competition in the agricultural sector. *See* "Agriculture Department and Justice Department Issue Shared Principles and Commitments to Protect Against Unfair and Anticompetitive Practices" (Jan. 3, 2022), https://www.usda.gov/media/press-releases/2022/01/03/agriculture-department-and-justice-department-issue-shared.

4

Pursuant to 28 U.S.C. § 1746, and under penalty of perjury, I declare the foregoing is true and correct to the best of my knowledge.

2-4-2022
Date

Douglas McKalip
Senior Advisor
Office of the Secretary
United States Department of Agriculture