# Pretrial Order Exhibit 1

## PARTIES' STATEMENT OF ADMITTED FACTS

Pursuant to Local Rule 16.3(c)(3), the parties jointly submit the following facts which are admitted and require no proof:

1. United States Sugar Corporation ("U.S. Sugar") is a Delaware corporation, with its headquarters and base of operations located in Clewiston, Florida.

2. U.S. Sugar grows sugar cane on approximately 200,000 acres of land in South-Central Florida.

3. U.S. Sugar owns and operates a cane mill, which mills sugar cane into raw sugar (sometimes referred to as "raws"), and a sugar refinery in Clewiston, Florida.

4. U.S. Sugar's Clewiston refinery became operational in 1998.

5. U.S. Sugar's Clewiston refinery produces about 850,000 tons of refined cane sugar annually.

6. The Clewiston refinery makes granulated and liquid sugar; it does not currently make brown or powdered sugar.

7. The Clewiston refinery does not currently make 1 lb. bags, 10 lb. bags, or supersacks of refined sugar.

8. U.S. Sugar currently grows more sugar cane than it has the capacity to process at its mill and each year sells sugar cane to third-party mills in Florida.

9. All sugar cane produced by U.S. Sugar in excess of what it can mill at Clewiston is currently being milled by third-party millers.

10. In addition to selling sugar cane to mills in Okeelanta and Osceola, Florida, U.S. Sugar currently sells certain amounts of sugar cane to the Sugar Cane Growers Cooperative of Florida ("SCGC") pursuant to a cane supply contract entered into on April 16, 2012.

11. U.S. Sugar (through its wholly owned subsidiary South Bay Growers) and SCGC amended their marketing agreement on December 20, 2021, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12. U.S. Sugar is a member of United Sugars Corporation ("United"), an agricultural cooperative that markets and sells refined sugar for U.S. Sugar and three other refined sugar producers.

13. U.S. Sugar joined United in 1998, and since then, all of U.S. Sugar's refined sugar has been marketed and sold by United.

14. United is a Capper-Volstead marketing cooperative based in Edina, Minnesota.

15. In addition to U.S. Sugar, United's other member-owners are American Crystal Sugar Corporation, Minn-Dak Farmers Cooperative, and Wyoming Sugar Company, LLC, which each grow sugar beets and process them to produce refined sugar.

16. American Crystal Sugar Corporation, Minn-Dak Farmers Cooperative, and Wyoming Sugar Company have sugar production operations in Minnesota, Montana, North Dakota, and Wyoming.

17. In addition to refined sugar from U.S. Sugar's Clewiston refinery, United markets refined sugar produced at eight other member-owned sugar production facilities located in Minnesota, Montana, North Dakota, and Wyoming.

18. United had U.S. sales of 59.4 million cwt (hundredweight or 100 lbs.), amounting to $2.24 billion in gross revenue, in FY19; and U.S. sales of 47.3 million cwt, amounting to $1.8 billion in gross revenue, in FY20.

19. In their marketing agreements with United, United's members agree to contribute all of the refined sugar they produce to the cooperative's refined sugar pool.

20. All members of United are paid the same price for the sale of refined sugar based on a net selling price ("NSP").

21. Each of United's members has appointed United as its sole worldwide agent for the sale and marketing of its refined sugar products.

22. United does not dictate how much refined sugar its members produce.

23. United tells its members what further processing their refined sugar might need (e.g., converting granulated refined sugar into brown, powdered, or liquid forms), and what packaging to use.

24. United decides which member's facility will be used to provide refined sugar to fulfill a particular customer order.

25. United has responsibilities for marketing its members' refined sugar, which includes locating customers and negotiating the sales contracts for its members' products.

26. United sells granulated, powdered, brown and liquid sugar and offers customers refined sugar in a variety of package sizes, including 2 lb., 4 lb., 5 lb., 10 lb., 25 lb., and 50 lb. bags, and supersacks.

27. Imperial Sugar Company ("Imperial") is an indirect, wholly-owned subsidiary of Defendant Louis Dreyfus Company LLC ("LDC").

28. LDC is a Delaware limited liability company.

29. LDC is an indirect, wholly-owned U.S. subsidiary of Louis Dreyfus Company B.V., which is headquartered in the Netherlands.

30. Imperial, through its subsidiaries, operates a cane sugar refinery and integrated liquid sugar production facility located in Port Wentworth, Georgia, near Savannah, Georgia.

31. Imperial's Port Wentworth refinery can make a variety of refined sugar products, including brown sugar, powdered sugar, and liquid sugar.

32. In addition to selling bulk refined sugar, Imperial can produce various package sizes including 1 lb., 2 lb., 4 lb., 5 lb., 10 lb., 25 lb., and 50 lb. packages of sugar, as well as supersacks and totes at the Port Wentworth refinery.

33. As of 2020, Imperial is capable of producing refined sugar without using bone char.

34. Imperial utilizes warehouses at its Port Wentworth refinery and has access to other warehouses operated by a third-party logistics company.

35. Imperial also leases and operates a sugar transfer and liquification facility in Ludlow, Kentucky.

36. Because Imperial does not own any cane farming or milling assets, it primarily depends on imports of raw sugar to feed its refinery.

37. Imperial's Port Wentworth refinery can accept delivery of raw sugar via ocean-going vessels.

38. Imperial currently sells sugar under the brand names Dixie Crystals, White Gold, and Imperial Sugar.

39. In summer 2018, Rabo Securities USA, Inc. ("Rabo"), at the time the exclusive financial advisor to LDC, prepared a Confidential Information Presentation which described Imperial Sugar as a "[b]est-in-class refiner, with strategically located transfer station relationships and a state-of-the-art packaging facility". Presentations including the quoted

language were sent to potential investors in, or buyers of the assets of, Imperial Sugar, including Pantaleon in July 2018, United in March 2019, and U.S. Sugar in March 2020.

40. Rabo, at the time the exclusive financial advisor to LDC for purposes of the sale of Imperial, prepared a number of financial analyses and projections over time regarding Imperial. As part of an internal valuation analysis prepared in November of 2018, Rabo projected Imperial's cash flow development from 2019 to 2028, as part of a discounted cash flow (DCF) analysis undertaken in order to calculate an implied enterprise value. That analysis was prepared using numerous assumptions. For purposes of that analysis, Rabo projected that Imperial would have a positive EBITDA that increased over time from 2019 through 2028. Different analyses that included projections of Imperial's EBITDA to be positive and increasing over time through 2028 were circulated internally by certain LDC and Imperial personnel up through at least mid-2020.

41. In May 2019, United and/or one or more of its members made a preliminary, non-binding indication of interest ("IOI") to acquire the assets of Imperial in a range of ▇▇▇▇ million, subject to certain specified criteria. In August 2019, LDC received a non-binding offer from United of ▇▇▇▇ (Enterprise Value) comprising: 1) ▇▇▇▇▇▇▇; and 2) up to ▇▇▇▇▇▇▇▇▇▇▇▇ from 2020 via an earn-out subject to certain EBITDA targets being met during 2020-2024. In May 2020, U.S. Sugar made an IOI which valued Imperial at an Enterprise Value of ▇▇▇▇ (+/- adjustment vs. target working cap), again subject to certain specified criteria. None of these were accepted by LDC.

42. In June 2020, U.S. Sugar submitted a "Revised Non-Binding Indication of Interest", which contained, in paragraph 7, a provision stating, "We believe consummating this

5

transaction in 2020 is the optimal outcome for both parties. To facilitate this objective and move forward in a timely manner, we believe further conversations should be conducted on an exclusive basis. Accordingly, we request seventy-five (75) days of exclusivity, with mutually agreed-upon thirty (30) day extensions as needed to consummate the Transaction. By signing below, you agree that, for a period of seventy-five (75) days following the date of your signature (as such period may be extended from time to time pursuant to this section), the Seller, to include any and all affiliates, subsidiaries (including [Imperial Sugar Company "ISC"]) and its advisors, will not directly or indirectly solicit interest from, or initiate or enter into or continue any negotiations or agreements with, third parties (and shall discontinue any and all such existing discussions) regarding the sale of ISC (whether through sale of shares, merger or other structure), or the sale of all or substantially all of the assets of ISC or other material assets that would reasonably be expected to be included or made available in connection with the sale of ISC as being discussed with us." That "Revised Non-Binding Indication of Interest" was counter-signed on behalf of the LDC on June 17, 2020, subject to the terms of, and conditioned upon the execution by Buyer of, Seller's June 12, 2020 letter agreement (the "June 12, 2020 Letter").

43. The June 12, 2020 Letter contained, in paragraph 2, a provision stating "We each believe consummating the Transaction as outlined in the IOI in 2020 is the optimal outcome for both parties. To facilitate this objective and move forward in a timely manner, we believe further conversations should be conducted on an exclusive basis. Accordingly, subject to all parties executing this letter agreement, for a period ending on August 30, 2020 (as such period may be extended from time to time by mutual agreement signed by all parties

6

hereto, such period, as extended, the "Exclusivity Period"), (I) LDC and its Affiliates (including ISC) and its advisors, will not directly or indirectly solicit interest from, or initiate or enter into or continue any negotiations or agreements with, third parties (and shall discontinue any and all such existing discussions) regarding the sale of ISC (whether through sale of shares, merger or other structure), or the sale of all or substantially all of the assets of ISC or other material assets that would reasonably be expected to be included or made available in connection with the sale of ISC as being discussed with US Sugar, and (ii) US Sugar and its Affiliates and its advisors, will not directly or indirectly initiate or enter into or continue any negotiations or agreements with third parties (and shall discontinue any and all such existing discussions) regarding the acquisition of, investment in, joint venture, partnership or similar transaction with, or acquisition of assets of, any business or entity engaged in the processing of sugar or milling of sugar cane (whether through purchase of shares, merger or other structure). Notwithstanding the foregoing, nothing herein shall restrict or prevent any third party investment in, or any sale, assignment or transfer of, any equity interests in LDC or any parent (direct or indirect) or any internal reorganization of LDC or its Affiliates. If, during the Exclusivity Period, US Sugar determines that it likely will not consummate the Transaction on the terms set forth in Section 1 of the IOI, US Sugar shall provide prompt written notice thereof to LDC." U.S. Sugar and LDC agreed to extensions of the exclusivity period until the Asset Purchase Agreement was executed.

44. On March 24, 2021, LDC, U.S. Sugar, and other parties executed an Asset Purchase Agreement pursuant to which U.S. Sugar's subsidiary, Ibis Acquisition, LLC (now United States Sugar Savannah Refinery, LLC), would acquire specified assets related to

the Imperial refining business for a cash payment of $315 million subject to specified adjustments with closing of the transaction subject to specified conditions (the "Proposed Transaction"). By letter agreement dated December 31, 2021, U.S. Sugar and LDC agreed, among other things, to amend certain conditions to closing relating to wastewater treatment and to reduce the cash payment for the Proposed Transaction to $297 million (subject to the adjustments specified in the APA).

45. The to-be-acquired assets include Imperial's Port Wentworth, Georgia cane sugar refinery; Imperial's leasehold interest in a leased sugar transfer and liquification facility in Ludlow, Kentucky; and four retail sugar brands: Imperial Sugar, Dixie Crystals, White Gold, and Holly Sugar.

46. United and U.S. Sugar entered into a March 24, 2021 letter agreement in connection with the proposed transaction whereby United agreed to comply with certain obligations of the March 24, 2021 Asset Purchase Agreement between LDC, U.S. Sugar, and other parties.

47. The March 2021 Asset Purchase Agreement contains a Non-Competition and Non-Solicit provision which, at Clause 5.8(a), specifies that, subject to certain exceptions, LDC shall not, for a period of five years following the closing "engage in the Restricted Business or any business that produces sucrose-based products in the United States that compete with the products produced or offered by the Business as of the Closing Date" with "Restricted Business" defined as "the business of (i) owning or operating a sugar refinery in the United States; and (ii) owning or operating a sugar melt facility in the United States." The non-compete provision does not apply to non-sugar sweeteners.

48. On April 20, 2021, United and its member-owners entered into a letter agreement to become effective as of the closing of U.S. Sugar's acquisition of Imperial pursuant to

which United would market refined sugar produced at Port Wentworth on behalf of U.S. Sugar.

49. Refined sugar is food-grade sugar produced by refining raw cane sugar or sugar beets.

50. In the United States, sugar cane is grown in the tropical and semitropical climates of Florida, Louisiana, Texas, and other states.

51. In North America, sugar beets are grown in a range of temperate climate conditions across eleven states—California, Colorado, Idaho, Michigan, Minnesota, Montana, Nebraska, North Dakota, Oregon, Washington, and Wyoming—and in Canada.

52. After it is harvested, sugar cane is converted to "raw" sugar at sugar mills, and the raw sugar is then processed into refined sugar at refineries.

53. Harvested sugar beets are processed and converted into refined sugar directly with no milling process required.

54. Customers can buy refined sugar in bulk, packaged, or liquid form.

55. Bulk refined sugar may be delivered by rail, truck, or barge.

56. Packaged granulated refined sugar comes in various sizes (e.g., 2 lb., 4 lb., 10 lb., 50 lb. bags, and supersacks.

57. Some customers operate facilities that can readily accommodate deliveries of granulated refined sugar in bulk form by rail or by truck.

58. Some customers are not set up to receive bulk deliveries of granulated refined sugar by rail or by truck.

59. Retailers and industrial food manufacturers frequently purchase sugar by issuing requests for proposals ("RFPs") for supply contracts.

60. American Sugar Refining Group International, Inc. ("Domino") is owned by Florida Crystals Corporation ("FCC") and SCGC.

61. Domino operates four sugar cane refineries in the United States in Crockett, California; Chalmette, Louisiana; Baltimore, Maryland; and Yonkers, New York.

62. Domino's parent company, FCC, owns a sugar refinery in Okeelanta, Florida (known as "South Bay") that refines Florida-milled raw sugar.

63. FCC also owns and operates sugar cane mills in Osceola, Florida and Okeelanta, Florida, used for the processing of sugar cane into raw sugar.

64. Domino sells refined sugar to retail customers under the brand names Domino, C&H, and Florida Crystals, among others.

65. Louisiana Sugar Refining ("LSR") operates a cane sugar refinery in Gramercy, Louisiana.

66. LSR is a 50/50 joint venture between Cargill Inc. and the Louisiana Sugar Growers and Refiners, Inc. ("SUGAR").

67. SUGAR is an agricultural marketing cooperative, consisting of eight sugar mills and associated growers.

68. LSR sources all of its raw sugar from SUGAR.

69. ▮.

70. ▮.

71. ▮.

72. ▮.

73. In May 2021, LSR announced plans to expand the operation of its sugar refinery in Gramercy, Louisiana to process more Louisiana cane sugar.

74. In addition to United members American Crystal Sugar, Minn-Dak Farmers Cooperative and Wyoming Sugar, entities in the United States that produce refined sugar from sugar beets include: Michigan Sugar Company, Amalgamated Sugar, Southern Minnesota, Western Sugar Cooperative, and Wyoming Sugar.

75. Amalgamated Sugar Company currently owns and operates three beet processing plants located in Idaho.

76. Southern Minnesota Beet Sugar Cooperative currently owns and operates a beet processing facility in Minnesota and one in southern California.

77. National Sugar Marketing Cooperative, Inc. ("National") is a cooperative of sugar producers and currently is the exclusive marketer and seller of refined sugar produced by its members Southern Minnesota Beet Sugar Cooperative and Amalgamated Sugar Company. National also markets all of the refined sugar of Sucden Americas Corporation.

78. Sucden Americas Corporation does not produce refined sugar in the United States.

79. Michigan Sugar Company is a cooperative that owns and operates four beet processing plants in Michigan, and a liquid melting facility in Ohio.

80. Western Sugar Cooperative owns and operates four sugar beet plants located in Colorado, Montana, Nebraska and Wyoming.

81. Companies in the United States have set up operations to convert raw sugar directly to refined liquid sugar.

82. CSC Sugar ("CSC") is the largest independent company in the United States that converts raw sugar directly to liquid sugar.

83. CSC produces refined sugar and operates refineries in five locations: (1) Covington, Tennessee; (2) Dallas, Texas; (3) El Paso, Texas; (4) Fairless Hills, Pennsylvania; and (5) Harrisonburg, Virginia.

84. Sucro Can Sourcing LLC d/b/a Sucro Sourcing produces refined liquid sugar and operates a raws-to-liquid refinery in Lackawanna, New York.

85. Distributors may repackage the refined sugar that they purchase or further process it into liquid, invert, brown, or powdered sugars before reselling.

86. The United States Department of Agriculture ("USDA") monitors changes in estimated sugar consumption, stocks, production, and imports during the course of the fiscal year. The USDA is statutorily mandated to ensure that (a) raw and refined sugar prices are above forfeiture levels, and (b) there are adequate supplies of raw and refined sugar in the domestic market.

87. If the USDA determines that an individual processor will be unable to market its allocation of sugar, the USDA may reassign the deficit, first to other domestic processors, and then to imports.

88. Under the Federal Sugar Program, beet processors and sugar cane processors can obtain annual non-recourse loans at favorable interest rates. The beet processors and sugar cane processors may choose to forfeit their sugar to the USDA in lieu of repaying the loans and interest.

89. The fiscal year for the Federal Sugar Program runs from October 1 to September 30.

90. The United States has international treaties and agreements that permit at least a certain quantity of raw and refined sugar into the United States at low- or no-duty tariffs.

91. Under the United States' membership in the World Trade Organization and agreements made in various free trade agreements, the USDA in conjunction with the Office of the U.S. Trade Representative implement a system of tariff-rate quotas ("TRQs") that allow certain amounts of "in-quota" sugar to enter the United States at a low- or no-duty tariffs.

92. Sugar in excess of the TRQs ("out-of-quota sugar") may enter the United States at the full-duty rate. Such sugar is referred to as "high-tier" or "Tier 2" sugar.

93. The importation of sugar from Mexico into the United States is currently governed by two agreements referred to as the U.S.-Mexico Suspension Agreements.

94. The *Harmonized Tariff Schedule of the United States (Ch. 17, Additional U.S. Note 5 (a) (ii))*, provides that "[w]henever the Secretary believes that domestic supplies of sugars may be inadequate to meet domestic demand at reasonable prices, the Secretary may modify any quantitative limitations [on imports] which have previously been established under this note…."

95. The Harmonized Tariff Schedule does not define what constitutes "reasonable prices."

96. U.S. Sugar's acquisition of Imperial's Dixie Crystals and Imperial Sugar retail brands will expand United's offering of branded refined sugar.

97. One of U.S. Sugar's rationales for acquiring the Imperial assets was to gain a hedge against the possibility that Congress might not renew the Federal Sugar Program.