# Exhibit D

**In the Matter Of:**

*USA vs*

US SUGAR CORPORATION

*JOHN YONOVER*

*February 24, 2022*



1

```
 1              UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF DELAWARE

 3    -------------------------X

 4    UNITED STATES OF AMERICA,:

 5              Plaintiff      :

 6         v.                  :

 7    UNITED STATES SUGAR      :   Civil Action No.:

 8    CORPORATION, UNITED SUGAR:   1:21-cv-01644-MN

 9    CORPORATION, IMPERIAL SUGAR:

10    COMPANY, and LOUIS DREYFUS:

11    COMPANY LLC.             :

12              Defendants.:

13    -------------------------X

14

15      HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY

16    REMOTE STENOGRAPHIC DEPOSITION OF JOHN YONOVER

17              Thursday, February 24, 2022

18                    1:35 p.m.

19

20

21

22    Job No.:  832871

23    Pages:  1 - 100

24    STENOGRAPHICALLY REPORTED BY:

25    GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR
```

2

1           Deposition of JOHN YONOVER, held remotely,

2    via videoconference at:

3

4

5           VIA VIDEOCONFERENCE

6

7

8

9           Pursuant to agreement, before Giselle

10   Mitchell-Margerum, Registered Professional Reporter,

11   Certified Reporting Instructor, Licensed Court Reporter

12   (TN), Certified Court Reporter (GA), Certified Court

13   Reporter (NJ), Certified Court Reporter (WA), Certified

14   Shorthand Reporter (OR), Certified Shorthand Reporter

15   (CA), and Notary Public (Washington, D.C.).

16

17

18

19

20

21

22

23

24

25

3

```
 1              A P P E A R A N C E S

 2   ON BEHALF OF THE UNITED STATES DEPARTMENT

 3   OF JUSTICE:

 4            US DEPARTMENT OF JUSTICE, ANTITRUST

 5            DIVISION

 6            CHINITA SINKLER, ESQ.

 7            JESSICA TATICCHI, ESQ.

 8            ALENA MAIOLO, ESQ.

 9            450 5th Street NW, Suite 8000

10            Washington, DC  20530

11            202-307-0924

12

13

14   ON BEHALF OF UNITED SUGAR CORPORATION AND

15   THE WITNESS:

16            LATHAM & WATKINS LLP

17            JENNIFER GIORDANO, ESQ.

18            CHRISTINE GREELEY, ESQ.

19            MOLLY BARRON, ESQ.

20            1271 Avenue of the Americas

21            New York, New york  10020

22            212-906-1264

23

24

25
```

4

1  APPEARANCES (cont'd):

2

3  ON BEHALF OF IMPERIAL SUGAR:

4          CRAVATH, SWAINE & MOORE

5          SERENA CANDELARIA, ESQ.

6          Worldwide Plaza

7          825 Eighth Avenue

8          New York, NY 10019

9          212-474-1000

10

11  ON BEHALF OF INDIAN SUGAR AND THE WITNESS:

12          MCGUIREWOODS

13          NICHOLAS J. GILES, ESQ.

14          GATEWAY PLAZA

15          800 EAST CANAL STREET

16          RICHMOND, VA 23219

17          804-775-1000

18

19  ON BEHALF OF IMPERIAL SUGAR COMPANY AND

20  LOUIS DREYFUS COMPANY:

21          NORTON ROSE FULBRIGHT, LLP

22          AMANDA WAIT, ESQ.

23          799 9th Street NW, Suite 1000

24          Washington, DC 20001

25          202-662-0200

5

```
 1   ALSO PRESENT:

 2           MICHAEL BRATKOWSKI, Videographer

 3           FAN ZHANG

 4           TYLER MAZUR

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

USA vs
US SUGAR CORPORATION                Highly Confidential

John Yonover
February 24, 2022

6

```
 1              W I T N E S S   I N D E X

 2

 3   Witness                          Page

 4

 5   JOHN YONOVER (sworn) ........................10

 6

 7       Examination by CHINITA SINKLER  ..........10

 8

 9       Examination by JENNIFER GIORDANO  ........57

10

11       Re-Examination by CHINITA SINKLER  .......81

12

13       Re-Examination by JENNIFER GIORDANO  .....94

14

15

16

17

18

19

20

21

22

23

24

25
```

USA vs                                                                    John Yonover
US SUGAR CORPORATION              Highly Confidential          February 24, 2022

7

```
 1              E X H I B I T   I N D E X

 2

 3    No.         Description        Page

 4

 5    Exhibit 1            INDSUG00002 .............57

 6

 7    Exhibit 2            INDSUG00001 .............57

 8

 9    Exhibit 3            INDSUG00003 .............57

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

8

```
 1          P R O C E E D I N G S

 2          THE VIDEOGRAPHER:  Good

 3  afternoon.  We are on the record at

 4  1:35 p.m. Eastern Time, on

 5  February 24th 2022.

 6      Here begins the videotaped

 7  deposition of John Yonover, in the matter

 8  of United States of America v. United

 9  States Sugar Corporation, et al.  Filed

10  in the United States District Court, for

11  the District of Delaware.

12      Civil action number is

13  1:21-cv-01644-MN.  Today's video

14  deposition is taking place via video web

15  conference, with other participants

16  attending remotely.

17      My name is Michael Bratkowski.  A

18  videographer from Lexistas Legal

19  Solutions.  Would counsel on the call

20  please identify yourselves and state whom

21  you represent?

22          MS. SINKLER:  Hi.  This is

23  Chinita Sinkler, with the United States

24  Department of Justice.  Joined by

25  colleagues, Jessica Taticchi, Alena
```

9

```
 1   Maiolo, and Fan Zhang.

 2            MS. GIORDANO:  Jennifer

 3   Giordano, from Latham & Watkins, on

 4   behalf of the defendant, United States

 5   Sugar Corporation.  And with me today,

 6   also from Latham, are Christine Greeley

 7   and Molly Barron.

 8            MS. CANDELARIA:  Hello.  Serena

 9   Candelaria, from Cravath, Swaine & Moore,

10   on behalf of Imperial Sugar.

11            MR. GILES:  This is Nicholas

12   Giles, of McGuireWoods, on behalf of the

13   witness, Mr. Yonover, and Indiana Sugars.

14            MS. WAIT:  And this is Amanda

15   Wait, Norton Rose Fulbright, on behalf of

16   Imperial Sugar Company and Louis Dreyfus

17   Company.

18            THE VIDEOGRAPHER:  Okay.  Thank

19   you.  Our court reporter today is

20   Giselle Mitchell, with Lexistas Legal

21   Solutions.  Would you please swear in?

22            THE COURT REPORTER:  Yes.

23   Mr. Yonover, please raise your right

24   hand.

25        Do you swear to tell the truth, the
```

10

1    whole truth, and nothing but the truth?

2              THE WITNESS:  I do.

3              THE COURT REPORTER:  Okay.  We

4    can start.

5                   JOHN YONOVER

6    Having been duly sworn testified as follows:

7    EXAMINATION BY MS. SINKLER:

8         Q.   Thank you.  Good afternoon again,

9    Mr. Yonover.

10        A.   Good afternoon.

11        Q.   Would you state your full name for

12   the record, please?

13        A.   John Benjamin Yonover.

14        Q.   And, Mr. Yonover, have you ever been

15   deposed before?

16        A.   I have.

17        Q.   So, I'll just briefly go over the

18   procedure for today.  Basically, since you've

19   been deposed before, you know, I'm going to

20   ask you a series of questions and the court

21   reporter is going to record my questions and

22   your answers.

23              So, it's important that you

24   wait until I finish my question before you

25   answer.  Okay?

61

```
 1    certain suppliers aren't -- aren't selling.

 2    They may have a bad crop or they may have

 3    labor problems or they may have already sold

 4    what they wanted to sell.  Hence the -- the

 5    variances between years.

 6              Every year is different.

 7         Q.  Okay.  Looking at Exhibit 1, we see

 8    that Indiana Sugars' top supplier for the last

 9    ████████████████████.  Is that right?

10         A.  Yes.  That's correct.

11         Q.  And who is Indiana Sugars' number

12    two supplier in two of the last three years?

13         A.  ████████.

14         Q.  ████████████ was number three in

15    2020?  Is that right?

16         A.  Yep.

17         Q.  It flipped to the third place when

18    imports took over number two?

19         A.  Yeah.  That's exactly right.

20         Q.  Okay.  And by the way, I should be

21    very clear that the category called "Offshore

22    Supply Chain," that's the import category.

23    Right?

24         A.  That is correct.

25         Q.  Okay.  And that can be many numbers
```

62

```
 1   of importers?

 2        A.   Yes.  Many different origins.

 3        Q.   Okay.  Are you aware that Cargill

 4   has announced an expansion plan at its

 5   facility in Gramercy, Louisiana?

 6        A.   I am aware.

 7        Q.   And are you aware that that

 8   expansion plan could increase the capacity at

 9   that Louisiana facility by as much as 50

10   percent?

11              MS. SINKLER:  Objection.  Calls

12        for speculation.

13              THE WITNESS:  What do I do?

14              MR. GILES:  You can answer.

15              MS. GIORDANO:  You can answer

16        if you know.  I'm just asking what you're

17        aware of.

18              THE WITNESS:  I'm supposed to

19        answer that question?

20              MS. GIORDANO:  If you know.

21        Yeah.

22              THE WITNESS:  Yes.  I am aware

23        of that.

24              MS. GIORDANO:  Okay.

25   BY MS. GIORDANO:
```

63

1     Q.   Would you consider that to be a

2   pretty significant expansion for a refiner

3   like LSR in Gramercy?

4              MS. SINKLER:  Objection.

5      Vague.

6              THE WITNESS:  I'm supposed to

7      answer.  Right?  Yeah.  Okay.  Sorry.

8         Yes, I think that's a large

9      expansion.  Yes.

10  BY MS. GIORDANO:

11     Q.   Okay.  For Indiana Sugars, what do

12  you expect that expansion to mean for you?

13     A.   Potentially, additional supply.

14     Q.   How do you think the price of that

15  supply might be available to you, based on the

16  expansion?

17     A.   There's many factors there.  I don't

18  have an answer for you on that.  I believe we

19  would be able to do more business with them.

20  That's my belief.

21     Q.   Okay.  Do you find -- do you regard

22  that as a good thing for Indiana Sugars?

23     A.   I do.

24     Q.   In the last five years, █████████

25  doesn't appear to have been higher than number

64

```
 1    five on your list.  Is that correct?

 2         A.   That's correct.

 3         Q.   And in 2021,  ▮▮▮▮▮▮▮  was number

 4    six?

 5         A.   Yes.

 6         Q.   In 2020, it was seventh?

 7         A.   Yes.

 8         Q.   And in -- from 2016 to 2018, they

 9    dropped down to eighth or ninth place?  Is

10    that right?

11         A.   That's correct.

12         Q.   And as we discussed, in all of those

13    instances, because there are categories like

14    the offshore imports above  ▮▮▮▮▮▮  in each

15    year, could  ▮▮▮▮▮▮▮  really be like a

16    fifteenth or twentieth supplier to you?

17              MS. SINKLER:  Objection.

18         Mischaracterizes testimony.

19              THE WITNESS:  Okay.  Yes.  I'm

20         sorry.  I've just got to ask a technical

21         question.  If you ask me a question and

22         somebody objects to it, do I still answer

23         the question?

24              MR. GILES:  Yes.

25              MS. GIORDANO:  Yes.
```

65

```
 1              MR. GILES:  Yes.  John, the

 2       only time that would be different is if I

 3       instruct you not to answer.

 4              THE WITNESS:  Okay.

 5              MR. GILES:  So, if somebody

 6       says an objection, go ahead and answer

 7       the question after the objection has been

 8       made.  The one exception is if I instruct

 9       you not to answer.

10              THE WITNESS:  Got it.  All

11       right.  Sorry, guys.  I sell sugar for a

12       living.  This is not what I do normally.

13           I don't know that 30 is the right

14       number, Ms. Giordano, but it certainly

15       would be a lower number if you count each

16       individual trading company or -- and/or

17       generation seller.

18  BY MS. GIORDANO:

19       Q.   Okay.  So, for example, in 2021,

20  ████████   was number six on your supplier list.

21  Potentially, how many -- in the real world,

22  what might that number really be if we counted

23  all of the offshore -- import supply chain

24  options?

25       A.   I would be speculating, at best.
```

66

```
 1        Q.   Okay.  Is there more than 10

 2   Offshore Supply Chains that you buy from?

 3        A.   Probably not in any given year.

 4        Q.   Okay.  More than five?

 5        A.   Yes.

 6        Q.   Okay.  So, in 2021, is it reasonable

 7   to think maybe ██████████ was as much as number

 8   11 on your list?

 9             MS. SINKLER:  Objection.  Asked

10        and answered.

11        A.   Reasonable, yes.

12        Q.   Okay.  And, similarly, for example,

13   in 2020, they were number seven; ████████ was.

14   Right?

15        A.   Yes.

16        Q.   Okay.  So, reasonable to think that

17   they -- that number may actually be as much as

18   12th on your list?

19        A.   On that year, it may have been even

20   lower.  Because that was the year of the force

21   majeure and there were all kinds of needs to

22   skip supply chain offshore.

23        Q.   Okay.  And fair to say that Indiana

24   Sugars has a number of supplier options that

25   it chooses to buy from before ███████?
```

67

```
 1        A.   As evidenced by their ranking.
 2        Q.   Okay.  Is it fair to say that
 3   Indiana Sugars will sell any suppliers sugar
 4   in the United States wherever Indiana Sugars
 5   thinks it makes sense to do that?
 6        A.   Yes.
 7        Q.   Do you -- does Indiana Sugars always
 8   know who it's competing against when it's
 9   competing for a customer's business?
10        A.   Very rarely do we know exactly who
11   we are competing with?
12        Q.   Okay.  Does it matter to Indiana
13   Sugars who you're competing against?  Do you
14   need to know that?
15        A.   Not generally.
16        Q.   Okay.  Does Indiana Sugars compete
17   as aggressively for any customer it's
18   competing for, regardless of whether its
19   suppliers may also be competing?
20        A.   Yes.
21        Q.   You testified earlier, I believe,
22   that Indiana Sugars has successfully won
23   business -- potentially, at least, to your
24   knowledge, against your suppliers.
25             Is that right?
```

90

1     they wouldn't want to be a seller at any

2     particular time.

3          Q.   And, specifically, with regard to

4     the last part of that, "When they've already

5     sold what they're going to sell."

6                    What does that mean?

7          A.   They have a finite amount of sugar

8     that they can sell in any given period.  And

9     once they sell it, it's gone.  They can't make

10    more than what they could make in a 12-month

11    period.

12         Q.   And then, just as far as a refiner

13    not wanting to sell, why might a refiner not

14    want to sell?

15         A.   Well, that would be a perfect

16    example of not wanting to sell.  Because they

17    have already sold out their capacity.

18         Q.   Mr. Yonover, how much refined sugar

19    do you buy on an annual basis, nationwide?

20         A.   So, you've already asked me that

21    question and I didn't ask it then and I don't

22    want to answer it now.  We're a very privately

23    held company and that information is very,

24    very confidential.

25         Q.   So, Mr. Yonover, are you being

91

```
 1   instructed by your counsel not to answer that

 2   question?

 3        A.   No.

 4             MS. SINKLER:  So, Mr. Giles, I

 5        would just say, as you know, it's not a

 6        valid basis not to answer this question.

 7        There is a protective order in this case,

 8        under which you can designate information

 9        as confidential.

10             MR. GILES:  Yes.

11             MS. SINKLER:  Are you going to

12        instruct the witness to answer the

13        question?

14             MR. GILES:  I would instruct

15        the witness to answer the question to the

16        best of his ability.  Yes, John.

17             THE WITNESS:  So, every year is

18        a little different, and I'm not exactly

19        sure from what our last year was.  I have

20        a pretty good idea, but I don't walk

21        around with the specific number.

22   BY MS. SINKLER:

23        Q.   Can you give me an estimate?

24        A.   For which year?

25        Q.   2021.
```

92

1      A.   ██████████████████████.

2      Q.   And how much of your total refined

3    sugar purchases are from importers?

4      A.   I don't know the answer to that

5    question.  As I said to you earlier, I don't

6    really track that.

7      Q.   And how much refined sugar do you

8    sell on an annual basis, nationwide?

9      A.   Well, we buy what we sell.  So, if

10   we bought "X," we would have sold the same.

11     Q.   So, in 2021, how much refined sugar

12   did you sell on an annual basis, nationwide?

13     A.   ███████████████████████████████

14   █████████████.

15     Q.   And in which state have you

16   considered building a new facility?

17     A.   I really don't want to answer that

18   question.  It's proprietary.

19     Q.   So, are you being instructed by your

20   counsel not to answer that question?

21     A.   No.

22          MS. SINKLER:  Mr. Giles, as you

23       know, it's not a valid basis not to

24       answer this question because it's

25       proprietary.  There is a protective order

93

1   in this case, under which you can

2   designate information as confidential.

3       Will you instruct the witness to

4   answer the question?

5           MR. GILES:  Yes.  I'll instruct

6   the witness to answer the question to the

7   best of his ability.

8           THE WITNESS:  ███████████

9   ████████████████

10          MS. SINKLER:  I don't think I

11  have any further questions.  But I just

12  need to check with my team, so it will

13  literally take me five minutes and I --

14          MS. GIORDANO:  Can we not do

15  another five minutes?  We have been very

16  patient today.  With 45-minute breaks,

17  let's just quickly decide that we can let

18  Mr. Yonover --

19          MS. SINKLER:  Excuse me.  I

20  don't think we've had 45-minute breaks on

21  my end.  I mean, I think we have come

22  back pretty quickly each time, with all

23  due respect.

24          MS. GIORDANO:  We just took a

25  45-minute break, probably not less than

94

1       eight minutes ago.  Could we please just

2       quickly wrap this up?

3                  MS. SINKLER:  I want to go off

4       the record and take a five-minute break.

5       Thank you.

6            Can we go off the record?

7                  THE VIDEOGRAPHER:  And,

8       Ms. Giordano, can I go off?

9                  MS. GIORDANO:  We can go off,

10      It's fine.

11                 THE VIDEOGRAPHER:  And we are

12      off the record at 4:40 p.m..

13           (Short break.)

14                 THE VIDEOGRAPHER:  And we are

15      back on the record, 4:43 p.m..

16                 MS. SINKLER:  Thank you.

17           Thank you, Mr. Yonover.  I don't

18      have any further questions for you.

19      Thank you very much for your time.

20                 THE WITNESS:  Thank you.

21   RE-EXAMINATION BY MS. GIORDANO:

22      Q.   Just very briefly, Mr. Yonover, with

23   respect to Exhibit 2, which is the

24   spreadsheet, as you sit here today, do you

25   have any reason to believe that that Exhibit 2

95

```
 1   does not accurately reflect Indiana Sugars'

 2   sales into the 12 states that DOJ has defined

 3   as the South East?

 4              MS. SINKLER:  Object.

 5      A.   So, it is unusual to see Arkansas in

 6   there, when it's not one of the states.  But I

 7   imagine there is a rational explanation why

 8   that's there.  So, I think it is fairly

 9   accurate.

10      Q.   Thank you.  And putting aside

11   Exhibit 2 -- totally unrelated to Exhibit 2,

12   as the President and COO of Indiana Sugars,

13   are you aware whether Indiana Sugars has

14   increased its sales significantly in the 12

15   states that the Department of Justice has

16   identified as the South East over the last

17   five years?

18              MS. SINKLER:  Objection.

19      Vague.

20      A.   So, again, this is not something I

21   track.  So I really don't have an opinion.

22   I'm sorry.

23      Q.   Okay.  Is it the case, though, that

24   one of the reasons Indiana Sugars is

25   considering building a new facility in
```

96

1       ████████, because it believes it has the

2    ability to sell more sugar into the 12 states

3    that the Department of Justice has identified

4    as the South East?

5         A.   That will be --

6                   MS. SINKLER:  Objection.  Form.

7                   THE WITNESS:  Sorry.

8                   MS. SINKLER:  I'm sorry.  I

9         didn't want to talk over you.  I just

10        wanted to get it on the record.

11           Objection.  Form.

12                  THE WITNESS:  That would be one

13        of the reasons.

14                  MS. GIORDANO:  Thank you.  Sir.

15        No further questions.  I appreciate your

16        time as well.

17                  MR. GILES:  Before we go off

18        the record today, I just wanted to say

19        that, you know, we do anticipate

20        designating large portions of this

21        deposition as confidential under the

22        protective order.

23           Under the protective order right

24        now, it's assumed confidential for 21

25        days, which limits this -- you know, this

1   information to outside counsel only.  I

2   know everyone is aware of that.  But just

3   wanted to make that clear for the record.

4        And, again, as I've mentioned to

5   counsel for both sides, we do anticipate

6   moving the Court to extend that

7   protection beyond just discovery as well.

8        We'd also like to read and sign, and

9   I'd like a copy of the transcript,

10  please.

11            MS. SINKLER:  Thank you,

12  Mr. Giles.  We will certainly provide you

13  a copy of the transcript when we receive

14  it and give you an opportunity to review

15  or decline.

16            MR. GILES:  Thank you.

17            MS. SINKLER:  Thank you.

18            THE VIDEOGRAPHER:  And this

19  will conclude the day's proceedings in

20  the deposition of John Yonover.  We are

21  off the record at 4:45 p.m. Eastern Time.

22       (Whereupon, the deposition adjourned

23  at 4:45 p.m.)

24

25

USA vs
US SUGAR CORPORATION                Highly Confidential

John Yonover
February 24, 2022

98

1                    REPORTER'S  CERTIFICATE

2

3          I, GISELLE MITCHELL-MARGERUM, the undersigned,
   a Registered Professional Reporter, Certified
4  Reporting Instructor, Licensed Court Reporter, and
   Certified Court Reporter, do hereby certify:

5

6          That the witness, JOHN YONOVER, before
   examination was remotely duly sworn to testify to
7  the truth, the whole truth, and nothing but the
   truth.

8          That the foregoing deposition was taken
   remotely stenographically by me on Thursday,
9  February 24, 2022, and thereafter was transcribed
   by me, and that the deposition is a full, true, and
10 complete transcript of the testimony, including
   questions and answers, and objections, motions and
11 exceptions made by counsel.

12         That reading and signing was requested; and
   that I am neither attorney nor counsel for, nor
13 related to or employed by, any of the parties to
   the action in which this deposition was taken; and
14 that I have no interest, financial or otherwise, in
   this case.

15

16         IN WITNESS WHEREOF, I have hereunto set
   my hand this    day of          2022.

17

18

19

20

21 GISELLE MITCHELL-MARGERUM, RPR, CRI, CCR, LCR, CSR

22

23

24

25