# Exhibit E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES SUGAR CORPORATION, UNITED SUGARS CORPORATION, IMPERIAL SUGAR COMPANY, and LOUIS DREYFUS COMPANY, LLC,<br><br>*Defendants.* | Case No. 21:1644 (MN) |

**DECLARATION OF JOHN B. YONOVER IN SUPPORT OF NON-PARTY INDIANA SUGARS, INC.'S MOTION TO SEAL COMPETITIVELY SENSITIVE DATA AND LIMITED PORTIONS OF JOHN B. YONOVER'S DEPOSITION TRANSCRIPT**

I, John B. Yonover, declare as follows:

1. I am President & Chief Operating Officer of Indiana Sugars, Inc. ("Indiana Sugars"). I have worked as a full-time employee of Indiana Sugars for approximately 35 years.

2. Indiana Sugars is a family-owned business, and I am a member of the third generation of the family to own and operate the business. Indiana Sugars is a closely-held private company.

3. Indiana Sugars is comprised of five separate businesses: Indiana Sugars, Missouri Sugars, New England Sugars, New York Sugars, and Sweet Specialty Solutions.

4. Indiana Sugars is a value-added distributor. As such, it purchases sugar from sugar suppliers, adds value to it in various ways (*e.g.*, packaging, liquification, grinding, warehousing, distribution, *etc.*), and then resells the sugar to its customers.

1

5. Indiana Sugars' sugar suppliers occupy at least two roles in the market. First, they supply value-added distributors like Indiana Sugars with sugar. Second, many of these sugar suppliers also sell sugar to the same customers that Indiana Sugars serves. In this way Indiana Sugars' suppliers are both suppliers and competitors.

6. In response to subpoenas that Indiana Sugars and I received, Indiana Sugars has produced various documents and I was deposed in the *United States v. United States Sugar Corp., et al.* litigation.

### *Supplier Information*

7. In particular, Indiana Sugars produced annual lists of its top ten suppliers for each year between 2016 and 2021, ranked by the amount of sugar supplied to Indiana Sugars. I understand that this information was designated INDSUG00002 and is being submitted to the Court as Exhibit B. In addition to producing the data, I discussed this information during my deposition. I understand that a transcript of my deposition is being submitted to the Court as Exhibit D.

8. Because Indiana Sugars both relies on its suppliers for inputs and competes with these suppliers to service its customers, Indiana Sugars has always taken great care to ensure that comprehensive information about its suppliers, and about how much sugar it purchases from each supplier (both in an absolute and a relative sense) is kept strictly confidential.

9. Data concerning the rankings of Indiana Sugars' suppliers are incredibly sensitive, as suppliers could use the data to determine Indiana Sugars' relative dependence on the supplier. This would erode Indiana Sugars' bargaining power with its suppliers.

10. For example, Indiana Sugars' largest suppliers, if they were to learn the precise extent of Indiana Sugars' reliance, could seek to use Indiana Sugars' dependence on them as a bargaining chip to force Indiana Sugars to pay higher prices.

### *Transactional Data and Customer Information*

11. In this litigation, Indiana Sugars also produced SKU-level transactional sales data. I understand that this information was designated INDSUG00001 and is being submitted to the Court as Exhibit A. These data show each customer's order value and volume, at a SKU level, and so can be used to calculate the prices charged for a wide variety of products that are included in the data.

12. Disclosure of this information would be devastating for Indiana Sugars. The information would provide Indiana Sugars' competitors with the ability to approach Indiana Sugars' customers with tailored offers on the prices, volumes, and products that these customers are currently purchasing from Indiana Sugars.

13. This danger is especially acute because, as noted above, certain of Indiana Sugars' competitors are also its suppliers—these supplier-competitors could use this data to approach Indiana Sugars' customers directly and cut Indiana Sugars out of the supply chain altogether.

14. Suppliers could also use this information in their negotiations with Indiana Sugars. Because these suppliers would have data on how much they charged Indiana Sugars for certain products and how much Indiana Sugars charged its customers for those same products, they could easily use this information to derive estimated profit margins for Indiana Sugars. They could then use this information to push Indiana Sugars to pay more for the product, seeking to capture Indiana Sugars' profits for themselves.

15. Customers' access to this information would also greatly harm Indiana Sugars. Customers would be able to see the prices that Indiana Sugars charged to other customers for the same products that they purchased. This would give customers significant negotiating power vis-à-vis Indiana Sugars, allowing them each to seek the lowest price that Indiana Sugars has charged for the products at issue over the covered time period.

16. In addition to the SKU-level transactional data, Indiana Sugars also produced a document that summarizes the above-referenced transactional data by identifying Indiana Sugars' five largest customers in the Southeast in each of the covered years, along with their purchase volumes in dollars. I understand that this information was designated INDSUG00003 and is being submitted to the Court as Exhibit C.

17. Indiana Sugars would be severely harmed by the release of this information for essentially the same reasons that it would be harmed if the SKU-level transactional data itself was released. This data identifies Indiana Sugars' largest customers in the Southeast and shows how much each purchased in dollars from each customer in any given year. It could be used by Indiana Sugars' competitors—in combination with the transactional level data—to target Indiana Sugars' most important customers with full knowledge of the products, volumes, and pricing that Indiana Sugars was offering to them.

18. For these reasons, Indiana Sugars has always taken great care to ensure that its pricing information, as well as information about who its largest customers are and what they typically purchase, remains strictly confidential.

*Size of Business*

19.     During my deposition in this matter, I answered questions about the overall size of Indiana Sugars (measured by the annual volume or sugar purchased and sold), and I understand that my attorney subsequently designated that answer as confidential.

20.     Information on the size of the company is one of the most closely held pieces of information possessed by Indiana Sugars. I have always taken great personal care to ensure that this information remains strictly confidential. Disclosure of information concerning Indiana Sugars' size to the public would be very detrimental to Indiana Sugars.

21.     Information about the size of Indiana Sugars is particularly sensitive because of the nature of Indiana Sugars' business. Indiana Sugars is a value-added distributor—its primary business involves buying and selling in the sugar market to its advantage—and public knowledge about Indiana Sugars' size (*i.e.*, how much it needs to buy and sell) would harm it in the marketplace.

22.     In particular, this information would give these counterparties insight into the volumes of sugar that Indiana Sugars needs to purchase and sell. The information would provide insight to suppliers on whether Indiana Sugars needs to buy more sugar to satisfy its existing commitments, eroding Indiana Sugars' negotiating position.

23.     Supplier-competitors could also use this information in deciding what prices to charge Indiana Sugars for sugar and whether or when to target Indiana Sugars' customers for themselves.

*Possible Expansion Plans*

24.     At my deposition, I also answered questions about Indiana Sugars' plans to expand into the Southeast U.S. market.  Again, I understand that my attorney subsequently designated that answer as confidential.

25.     Indiana Sugars' exploration of additional facilities is incredibly sensitive and is very closely held, even within Indiana Sugars.  I have always taken great personal care to ensure that our expansion plans remain strictly confidential until that is no longer possible. The specific states being considered for the expansion are even more sensitive, with a very limited number of Indiana Sugars employees having access to this information.

26.     Public disclosure of this information would undermine our possible entry plans.  In particular, disclosure of this information would allow competitors to beat Indiana Sugars into the relevant markets and/or target the customers that Indiana Sugars is aiming to serve through this expansion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 11th day of April, 2022.

*John Yonover*
_____
John B. Yonover
President & Chief Operating Officer
Indiana Sugars, Inc.