IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | |
| ) | C.A. No. 21-cv-1644 (MN) |
| UNITED STATES SUGAR ) | |
| CORPORATION, UNITED SUGARS ) | REDACTED - PUBLIC VERSION |
| CORPORATION, IMPERIAL SUGAR ) | |
| COMPANY, and LOUIS DREYFUS ) | |
| COMPANY LLC, ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANTS' RESPONSE TO SECTION II.C OF PLAINTIFF'S REPLY BRIEF

Morris, Nichols, Arsht & Tunnell LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant United States Sugar Corporation*

Hogan McDaniel
Daniel K. Hogan (# 28414)
Daniel C. Kerrick (#5027)
1311 Delaware Avenue, Suite 1
Wilmington, DE 19806
(302) 656-7540
dkhogan@dkhogan.com
dckerrick@dkhogan.com

*Attorneys for Defendant United Sugars Corporation*

Richards, Layton & Finger. P.A.
Kelly E. Farnan (# 4395)
One Rodney Square
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendants Imperial Sugar Company and Louis Dreyfus Company LLC*

Originally Filed:  September 14, 2022
Redacted Version Filed:  September 21, 2022

Plaintiff's reply contends that merely performing a hypothetical monopolist test ("HMT") of any kind—regardless of how flawed, conclusory, or detached from commercial realities—satisfies its burden to prove a relevant geographic market. Plaintiff is wrong.

Plaintiff's application of the HMT is critically flawed and must be rejected because its expert ignored the "fundamental antitrust principle," *FTC v. Hackensack Meridian Health*, 30 F.4th 160, 169 (3d Cir. 2022), that the geographic market "must 'correspond to the commercial realities of the industry' being considered." *FTC v. Penn State Hershey Med.*, 838 F.3d 327, 338 (3d Cir. 2016) (quoting *Brown Shoe v. United States*, 370 U.S. 294, 336-37 (1962)). Contrary to usual practice, where the HMT is "an iterative analysis," in which the "analyst proposes a candidate market, . . . then adjusts the candidate market and reruns the simulation as necessary," *FTC v. Advocate Health Care Network*, 841 F.3d 460, 473 (7th Cir. 2016), Plaintiff's expert did not choose the candidate markets at all. Instead, he just accepted the markets Plaintiff chose. DFOF ¶¶ 137, 166(a).

This is not a minor technical issue with Plaintiff's expert's analysis; it is a fundamental defect. The HMT process is "not merely a 'statistical exercise' looking for a hypothetical monopolist that can impose a SSNIP." *FTC v. Thomas Jefferson Univ.*, 505 F. Supp. 3d 522, 542-43 (E.D. Pa. 2020). As the Government has acknowledged in other cases, even a "geographic market which passes the HMT must correspond with commercial realities." *Id.* But Plaintiff's markets do not. Specifically: (i) no industry participant recognizes Plaintiff's markets, DFOF ¶¶ 156-59, 176;[1] (ii) sugar consistently flows into, out of, and through those areas, as Plaintiff admits, *id.* ¶¶ 5-9, 136-55; (iii) industry participants, including the chief economist of the USDA sugar program, observe that arbitrage occurs in response to price disparities, *id.* ¶¶ 6, 140, 143, 176; (iv) economic data confirms

---

[1] Plaintiff's vague claim that industry participants think "competition is regional," D.I. 233 at 7, does not prove that the area of effective competition is *Plaintiff's regions*. Dr. Hill showed a "competitive overlap" region where the merger raises no competitive harms. DFOF ¶¶ 170-73. And no representative customer raised concerns about this merger in *any region*. *Id.* ¶¶ 185, 193.

that prices change and adjust nationally, not regionally, and certainly not solely in Plaintiff's claimed markets, *id.* ¶¶ 161-65;[2] (v) massive quantities of sugar are available to be delivered into the alleged markets, including from distributors, importers, and producers currently shipping elsewhere, *id.* ¶¶ 27-28, 35, 39-40, 58, 61-73, 141, 151-53; and (vi) transportation costs are a small portion of overall price and, as Plaintiff admits, not "determinative" of supply options, *id.* ¶¶ 144-50; D.I. 233 at 7.

Because Plaintiff's chosen markets do not comport with industry realities, contrary to *Brown Shoe*, Plaintiff's expert's HMT "results" are insufficient to prove any geographic market. *Penn State*, 838 F.3d at 327 (reversing a market definition that "reflect[ed] a misunderstanding of the 'commercial realities' of the healthcare market"); *Thomas Jefferson*, 505 F. Supp. 3d at 543. Moreover, where (as here) customers regularly turn to suppliers outside a proposed geographic market, that market is too narrow. *See United States v. Sabre*, 452 F. Supp. 3d 97, 142-43 (D. Del. 2020); *Dicar, Inc. v. Stafford Corrugated Prods.*, 2010 WL 988548, at *12 (D.N.J. Mar 12, 2010).

Plaintiff argues that its market definition already reflects the fact that sugar flows. Not so. Plaintiff's expert did not consider the ease with which customers can source sugar from outside Plaintiff's markets in response to a price increase. DFOF ¶¶ 138, 143, 164. Plaintiff's expert assumed that if prices were to increase by a significant amount in Plaintiff's alleged markets, immaterial incremental sugar would be available to in-market customers, even though the USDA's economist testified otherwise, and Plaintiff itself so admitted in closing. *Id.* ¶ 6 ("we've all recognized . . . sugar flows" and if prices increase in one area, "sugar would flow in from other places"). Moreover, Plaintiff and its expert did not account for arbitrage and sugar availability from

---

[2] The record does not support Plaintiff's broad assertion that "prices actually differ." D.I. 233 at 6. Only Defendants' expert performed any empirical analysis on prices across regions, and he found that prices have not differed inside and outside the alleged markets and that prices equalize across regions. DFOF ¶¶ 161-65. This undermines any claim of a price discrimination market. *See FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 38 (D.D.C. 2015); *cf. also FTC v. Tronox, Ltd.*, 332 F. Supp. 3d 187, 204 (D.D.C. 2018) (relying on evidence of "dramatic relative price increase" across regions).

(i) distributors, *id.* ¶¶ 117-19, 124, 141, 153-54; (ii) importers redirecting their substantial volumes (20-23 million cwt), *id.* ¶¶ 73, 141, 153(d); (iii) the 30-35% of customers that currently pick up sugar and arrange for their own delivery, *id.* ¶¶ 72, 154; (iv) the more than 75% of sugar volume bought by customers with locations both inside and outside Plaintiff's markets, which could shift sugar among their own plants, *id.* ¶ 155; or (v) the observed fact that sugar flows from areas of surplus to areas of deficit, *id.* ¶¶ 5-9, 136-55.[3] By assuming away those viable options, Plaintiff will always pass this HMT: this is because even if the test is applied on a candidate market as narrow as an individual state or county, the hypothetical monopolist would still find raising price to be profitable. It serves to rubber stamp any proposed geographic market regardless of size. That is at odds with the HMT's entire purpose, which is to ensure that a plaintiff has not defined a market too narrowly, *FTC v. Rag-Stiftung*, 436 F. Supp. 3d 278, 299 n.11 (D.D.C. 2020), but Plaintiff's application of the test provides no insight on that issue. Indeed, Plaintiff's expert agreed that markets ranging from the entire United States to the "Georgia Plus" area would pass his test, DFOF ¶ 174, and he did not attempt to test any smaller markets, *id.* ¶¶ 137, 166(a).

Plaintiff's response to these fatal defects in its expert's analysis is to argue that Defendants' expert did not undertake an HMT or demonstrate that modifications to Dr. Rothman's HMT methodology would lead to different results. D.I. 233 at 5. But geographic market definition is "a question of fact," *Lansdale v. Phila. Elec. Co.*, 692 F.2d 307, 311 (3d Cir. 1982), that *Plaintiff* must prove, or it loses. *Sabre*, 452 F. Supp. 3d at 143. Defendants' expert need not have performed an independent HMT to conclude that Plaintiff's geographic markets are wrong. Plaintiff's reliance on

---

[3] Although Plaintiff suggests the Court should ignore the likelihood of these suppliers "expanding their sales in the relevant market" in response to a price increase until its anticompetitive-effects analysis, D.I. 233 at 7, these facts provide direct evidence of vast arbitrage potential. Plaintiff is required to show "limited arbitrage" to sustain a price discrimination market, but it has failed to do so. *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 47 (D.D.C. 2018); *cf. also Thomas Jefferson*, 505 F. Supp. 3d at 528.

proposed geographic markets that, contrary to the Supreme Court's *Brown Shoe* decision, do not comport with commercial realities, means that Plaintiff has not met, and cannot meet, its burden.[4]

Plaintiff's arguments that defining any expanded market would only serve to bring in customers "facing significantly different competitive options," "would not bring in additional suppliers," and would dilute "harm to customers located close to Defendants' refineries," D.I. 223 at 5, 6, are all highly flawed. The error emanates from the fact that Plaintiff suggests "the purpose" of geographic market definition is to "identify the customers who are most likely to be harmed by the merger," *id.* at 5, when the overarching purpose actually is to determine "'the area of effective competition' between firms." *Advocate Health*, 841 F.3d at 469. As Dr. Hill explained, a larger geographic area better captures the effective competition between the merging parties and the available options for consumers in the market, *including those in Plaintiff's narrower areas*. DFOF ¶¶ 138, 143, 170-75.[5] The point is that even customers in Plaintiff's alleged markets have more supply options than the current sales in those markets suggest. Those options are not necessarily "additional suppliers," but large, additional *volumes* of sugar that suppliers sell near (or transport through) Plaintiff's alleged markets that could easily be redirected to customers in those markets (i.e., dropped off along the way to their destination) in the event of a price increase.[6]

---

[4] Plaintiff's expert conceded that both of the areas that Dr. Hill evaluated *would* pass the HMT that Dr. Rothman applied. DFOF ¶¶ 172, 174.

[5] Plaintiff's repeated citations to *Advocate Health* for the proposition that an overbroad market will understate "the likely anticompetitive effects of hospital mergers," D.I. 233 at 5, 6, is uninformative here, as the court was not discussing an HMT, and hospital mergers present unique market definition issues. *See* 841 F.3d at 470-71.

[6] The same flaw plagues Plaintiff's market shares. They include only static estimates of what suppliers have sold to in-market customers in the past, DFOF ¶¶ 178-79, and fail to account for how sugar would flow in response to a price increase. For example, consider a supplier with a silo in Louisiana (e.g., LSR)—just over the border from Plaintiff's markets. Under current prices, ▓▓ of the silo's sugar goes into the market and ▓▓ goes elsewhere. DFOF ¶ 27. If prices rise inside the market, then more sugar would flow in across the artificial market border. Plaintiff ignores this reality and considers only current sales.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Lawrence E. Buterman<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br><br>Amanda P. Reeves<br>Jennifer L. Giordano<br>Lindsey S. Champlin<br>Molly M. Barron<br>David L. Johnson<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>(202) 637-2200<br><br>Christopher S. Yates<br>Kelly S. Fayne<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>(415) 391-0600<br><br>Elyse M. Greenwald<br>LATHAM & WATKINS LLP<br>10250 Constellation Boulevard, Suite 1100<br>Los Angeles, CA 90067<br>(213) 485-1234 | MORRIS NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jack B. Blumenfeld*<br><br>Jack B. Blumenfeld (#1014)<br>Brian P. Egan (#6227)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>began@morrisnichols.com<br><br>*Attorneys for Defendant United States Sugar Corporation* |

[*Additional signatures on next page*]

|  |  |
|---|---|
|  | HOGAN MCDANIEL |
|  | */s/ Daniel K. Hogan* |
| OF COUNSEL: | Daniel K. Hogan (#2814) |
|  | Daniel C. Kerrick (#5027) |
| Peter J. Schwingler | 1311 Delaware Avenue, Suite 1 |
| Jonathan Ripa | Wilmington, DE 19806 |
| STINSON LLP | (302) 656-7540 |
| 50 South Sixth Street, Suite 2600 | dkhogan@dkhogan.com |
| Minneapolis, MN 55402 | dckerrick@dkhogan.com |
| (612) 335-1974 |  |
|  | *Attorneys for Defendant United Sugars Corporation* |
|  | RICHARDS, LAYTON & FINGER, P.A. |
|  | */s/ Kelly E. Farnan* |
| OF COUNSEL: | Kelly E. Farnan (#4395) |
|  | 920 N. King St. |
| Christine A. Varney | Wilmington, DE 19801 |
| David R. Marriott | (302) 651-7700 |
| Peter T. Barbur | farnan@rlf.com |
| Timothy G. Cameron |  |
| Daniel K. Zach | *Attorneys for Defendants Imperial Sugar Company and Louis Dreyfus Company LLC* |
| CRAVATH, SWAINE & MOORE LLP |  |
| Worldwide Plaza |  |
| 825 Eighth Avenue |  |
| New York, NY 10019 |  |
|  |  |
| Amanda L. Wait |  |
| Vic Domen |  |
| NORTON ROSE FULBRIGHT US LLP |  |
| 799 Ninth Street, NW, Suite 1000 |  |
| Washington, DC 20001 |  |
| (202) 662-4550 |  |
|  |  |
| Darryl Wade Anderson |  |
| NORTON ROSE FULBRIGHT US LLP |  |
| 1301 McKinney St. Suite 5100 |  |
| Houston, TX 77010 |  |
| (713) 651-5562 |  |

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 21, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Laura D. Hatcher, Esquire<br>Shamoor Anis, Esquire<br>UNITED STATES ATTORNEY'S OFFICE<br>DISTRICT OF DELAWARE<br>1313 North Market Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Brian Hanna, Esquire<br>John R. Thornburgh II, Esquire<br>Jonathan Y. Mincer, Esquire<br>Jessica J. Taticchi, Esquire<br>Jenigh J. Garrett, Esquire<br>Chinita M. Sinkler, Esquire<br>Jill Ptacek, Esquire<br>Curtis Wayne Strong, Esquire<br>Michael E. Wolin, Esquire<br>George C. Nierlich, Esquire<br>Stephanie E. Pearl, Esquire<br>Brian R. Young, Esquire<br>David A. Geiger, Esquire<br>Robert.Lepore, Esquire<br>Soyoung.Choe, Esquire<br>U.S. DEPARTMENT OF JUSTICE<br>ANTITRUST DIVISION<br>450 Fifth Street, NW, Suite 8000<br>Washington, DC  20530<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)